OPINION
Chief Justice SUTTELL, for the Court.
The plaintiff, Quest Diagnostics, LLC (Quest), appeals from the Superior Court’s grant of summary judgment in favor of the defendants, Pinnacle Consortium of Higher Education, a Vermont Reciprocal Risk Retention Group (Pinnacle), and Genesis Insurance Company (Genesis) in this insurance coverage dispute.
The plaintiff asserts that the hearing justice erred in denying its motion for summary judgment and in granting defendants’ motions for summary judgment. Specifically, plaintiff argues that: (1) it is covered as an insured under the Pinnacle general liability policy; (2) it is covered under the professional liability coverage section of the Pinnacle policy; (3) it is covered under the pertinent Genesis excess coverage policy; and (4) both Pinnacle and Genesis breached their duties to defend and waived their rights to deny coverage because they did not respond to plaintiffs demand for defense in a reasonably timely manner. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.
I
Facts and Procedural History
Brown University and Quest entered into a Professional Services Agreement (PSA), in which Brown retained Quest as an independent contractor, responsible for performing “certain clinical laboratory testing for students and employees” at the Brown University health center. The PSA set forth policies for the performance of certain tests, and required both parties to procure four types of insurance coverage: workers’ compensation insurance, general liability insurance, “All Risk” property insurance, and professional liability insurance. Notably, the agreement obligated both to name the other party as an additional insured under their general liability policies; there was no requirement that they do so for any of the other types of insurance. Brown secured insurance through Pinnacle and excess insurance through Genesis.
On May 10, 2006, Pauline Hall, a graduate- student at Brown University, sought treatment at the university’s health services clinic. At the time, Ms. Hall was experiencing a sore throat, nausea, and ear pain. She was seen by Rita Shiff, a physician’s assistant who was employed by Brown. Ms. Shiff ordered a rapid strep test, to be performed by Quest. The test was not performed promptly, and results were not returned to the health center.[1] *951 When Ms. Hall returned to the health center on May 12, 2006, she was diagnosed with toxic shock syndrome — an illness that resulted in a prolonged hospital stay and permanent injuries.
On June 26, 2006, Brown notified Pinnacle and Quest of the incident and the potential claim arising from it.[2] On March 24, 2008, Ms. Hall filed suit in Superior Court against Ms. Shift, Brown, and Quest, alleging, inter alia, that Quest failed to exercise the “degree and skill expected of [a] reasonably competent provider of laboratory services” in failing to process the test and in failing to provide the results of the testing in a timely manner. On December 10, 2010, Brown and Ms. Shift filed a cross-claim against Quest, alleging that Quest negligently failed to “properly process the Rapid Strep test, * * * and to communicate the results” of the test to the health center. In addition to the negligence claim, Brown asserted claims for breach of contract, indemnification, and contribution.
On May 4, 2011, Ms. Hall settled her claims with Brown and its insurers, Pinnacle and Genesis. Quest did not participate in the settlement, and the Brown cross-claim was not resolved. On July 15, 2011, Quest sent a letter to Brown’s counsel, demanding, for the first time, “a complete defense and indemnification from Pinnacle,” and requesting that Brown’s counsel forward the letter to Pinnacle and provide the relevant contact information to Quest. When Quest did not receive a reply, it sent a follow-up letter on July 27, 2011. Genesis, the excess insurer, never received a copy of these letters.
On November 7, 2011, Quest filed the instant action, seeking a declaratory judgment that it was entitled to a defense from Pinnacle and indemnification under the Pinnacle and Genesis policies. On May 11, 2012, Quest filed a motion for summary judgment; Pinnacle and Genesis each opposed the motion and filed their own motions for summary judgment.
A hearing was held on February 5, 2013; on March 14, 2013, the hearing justice issued a written decision denying Quest’s motion for summary judgment and granting summary judgment to Pinnacle and Genesis, declaring that Quest was not entitled to defense and indemnification from either insurer. Judgment was entered on March 19, 2013, and Quest timely appealed. Further facts will be provided as necessary to discuss the issues raised on appeal.
II
Standard of Review
“In reviewing the parties’ cross-motions for summary judgment, we examine the matter de novo.” Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 424 (R.I.2013) (quoting Derderian v. Essex Insurance Co., 44 A.3d 122, 126 (R.I.2012)). “In reviewing the Superi- or Court’s judgment on the parties’ motions for summary judgment, we * * * apply the same standards as those used by the trial court.” Id. (quoting Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I.2001)). “Thus, ‘[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.’ ” Id. at 424-25 (quoting Derderian, 44 A.3d at 126-27).
*952 III
Discussion
On appeal, Quest argues that it is covered as an insured under the Pinnacle policy, under both its general liability and professional liability sections. Quest also asserts that it is covered under a 2010/2011 excess policy issued by Genesis. Finally, Quest argues that both defendants waived their rights to deny coverage by not responding to its demand for defense in a reasonably timely manner. All parties agree that Quest had contracted with Brown to provide clinical laboratory testing, and that the PSA that memorialized their agreement also required both parties to obtain general liability insurance, upon which each would name the other as an additional insured. Further, both Quest and Brown were required to obtain professional liability coverage, but there was no obligation to name the other party as an additional insured. Brown obtained both general liability and professional liability insurance from Pinnacle.[3] At issue is whether Quest is covered by a policy relative to the allegations contained in the underlying action and in Brown’s cross-complaint.
Brown University is the named insured on the Pinnacle policy; the policy includes the following language in Endorsement 4:
“It is agreed that the ‘Who is an Insured’ provision of All Coverage Parts are amended to include:
« % * *
“(d) At the option of the Named Insured shown on the declarations page of this policy, any person, corporation, company, organization, estate or other entity but only to the extent the Named Insured has agreed to do so.”
Thus, because the PSA is the basis of the agreement to extend coverage to Quest as an additional insured, we must construe the PSA and the Pinnacle policy together, in order to determine the extent to which Quest may be entitled to coverage. See Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I.1996) (“[I]nstruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract.”).
Turning first to the PSA, the relevant portion reads:
“2.6 [Quest] and [Brown] shall purchase and maintain at their sole expense and with an insurance company or through self-insurance the following insurance coverage and limits: (i) Worker’s Compensation (covering [Quest’s] employees) to statutory limits; (ii) Comprehensive General Liability Insurance for injuries to persons and property occurring at the SITE or as a result of this Agreement in the amount of at leas[t] ONE MILLION DOLLARS ($1,000,000.00) per occurrence and TWO MILLION DOLLARS ($2,000,000.00) aggregate. In addition, the Certificate(s) of Insurance shall name [Brown] or [Quest] as an ‘Additional Insured’; (iii) ‘All Risk’ Property Insurance, insuring against damage to or loss of any property, to its full insurable value, of [Quest] and [Brown], its officers, servants, employees, agents, licensees, or any person or entity claiming by, through or under [Quest] and [Brown] located on the premises, and, if available such insurance shall contain a waiver of any right of subrogation which such insurance carrier might have against [Brown] or [Quest], its servants, or invitees, and (iv) Professional Liability Insurance, insuring against medical *953 malpractice and other liability which may arise as a result of [Quest’s] or [Brown health center’s] profession and/or business in an amount of not less than ONE MILLION DOLLARS ($1,000,000). Such policies shall contain a provision(s) to the effect that they may not be cancelled or coverage materially altered without at least thirty (30) days’ advance written notice to [Brown].”
The PSA is clear and unambiguous in requiring Quest and Brown to name one another as additional insureds only under their respective general liability insurance coverage.
Brown obtained general liability coverage and professional liability coverage from Pinnacle. This coverage was packaged together under one policy number. Pinnacle asserts that Quest is covered only under the general liability provisions, which are inapplicable to the claims asserted in the underlying action and cross-claim. Quest concedes that there are two coverages, but argues that there is only one policy with one policy number; thus Quest asserts that it is an additional insured under all of the coverage parts.
Although it appears (and Pinnacle concedes) that Quest is a named insured under the general liability coverage, there are two dozen numbered endorsements that modify coverage; two of these endorsements are pertinent to this dispute. After referencing the section of Coverage A that covers bodily injury, Endorsement No. 7 modifies that provision, stating:
“COMMERCIAL GENERAL LIABILITY COVERAGE FORM
“INCIDENTAL MALPRACTICE COVERAGE/HOSPITAL
PROFESSIONAL LIABILITY EXCLUSION
U ‡ * *
“However, this policy does not apply to bodily injury arising out of the following activities or services conducted at or performed in a hospital setting or a Student/Employee Healthcare Facility:
“1. The rendering of or failure to render:
“(a) Medical, surgical, dental, x-ray, or nursing service or treatment, or the furnishing of food or beverages in connection therewith; or
“(b) any sendee or treatment conducive to health or of a professional nature; or
“(c) any cosmetic or tonsorial service or treatment.”
Brown’s cross-claim, based on the allegations in Ms. Hall’s complaint, unambiguously alleges a cause of action that arose from Quest’s negligence in failing to perform a test — certainly a service conducive to health — in a manner consistent with that of a “reasonably competent provider of laboratory services,” which is the standard of care in any professional liability action. See Restatement (Second) Torts § 299A at 73 (1965) (“[0]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing * * *.”). Endorsement 7, therefore, specifically excludes coverage for Quest with regard to professional liability under the general liability coverage of the Pinnacle policy.
Quest argues that Ms. Hall’s injury did not arise from, or at least not entirely from, services performed at the health center because the failure to perforan a rapid strep test occurred offsite, at one of Quest’s other testing facilities. However, the action that allegedly led directly to Ms. Hall’s injury — the placing of her test sample in the wrong bag, thus sending it to the wrong facility — occurred at the health cen *954 ter. The allegations that Quest failed to test promptly, and to notify Brown as required by the PSA, all flow from that first error. Accordingly, the actions alleged in the initial complaint and in Brown’s cross-complaint fall squarely within Endorsement 7, excluding professional liability coverage from the general liability coverage.
Quest further argues that the conduct at issue was not professional, but merely administrative. This argument is unavailing. Brown contracted with Quest for the professional service of providing clinical laboratory testing. The contract is entitled “Professional Services Agreement,” thus clearly indicating that Quest was to perform services “of a professional nature.” Just as doctors spend time charting, and lawyers scheduling, professional services necessarily include a number of administrative tasks. The PSA specifically includes some of these tasks, requiring Quest to provide courier service, report STAT test results within one to three hours of receipt of the test, and fax results when completed. Accordingly, all aspects of testing, including routing the sample to the appropriate laboratory, are a professional service and are excluded from the general liability coverage in the Pinnacle policy.[4]
Quest next argues that it is an additional insured under the professional liability coverage offered by Pinnacle. Endorsement 17 provides coverage for professional liability on a claims-made basis and contains the following exclusion:
“1. This coverage does not apply to:
“A. Any claim for bodily injury, sickness, disease or death of any person; but this exclusion shall not apply if such bodily injury, sickness, disease or death is a result of any act, error or omission committed in a student/employee health care facility subsequent to 7/1/80 as a result of the following:
“1. The rendering of or failure to render:
“(a) medical, surgical, dental, x-ray, or nursing service or treatment or furnishing of food or beverages in connection therewith; or “(b) any service or treatment conducive to health or of a professional nature; or
“(c) any cosmetic or tonsorial service or treatment.”
Thus, Endorsement 17 covers the activities that are specifically excluded from the general liability coverage in Endorsement 7. Quest contends that because it is an additional insured under Pinnacle’s policy, it is therefore an additional insured under all coverage parts of the policy.
To adopt Quest’s reading of the policy would be to ignore the plain meaning of Endorsement 4, which defines an additional insured as “any person, corporation, company, organization, estate or other entity but only to the extent the Named Insured has agreed to do so.” (Emphasis added.) The source of Brown’s assent to coverage of Quest as an additional insured is found in the PSA, in which Brown agrees to name Quest as an additional insured on its general liability coverage. There is no requirement, nor is there any agreement to be found, that Brown pro *955 vide professional liability coverage to Quest. As we previously have stated, “We do not engage in mental gymnastics * * * to read ambiguity into a policy where none is present.” Peloquin, 61 A.3d at 432 (quoting Sjogren v. Metropolitan Property and Casualty Insurance Co., 703 A.2d 608, 610 (R.I.1997)). Having carefully examined the policy and the PSA from which it stems, we cannot conclude that Brown gratuitously obtained professional liability insurance for its independent contractor in addition to the coverage it obtained for itself.
The language of the PSA and the Pinnacle policy is clear and unambiguous — although Quest is an additional insured under the general liability coverage, it is not an insured under the professional liability coverage. Because the claims against Quest allege professional negligence, they fall within the purview of professional liability insurance and the PSA. Accordingly, Pinnacle has no duty’to defend nor to indemnify Quest in this action.
Quest also argues that it qualifies for excess coverage from Genesis under its 2010/2011 policy. We need not address whether coverage under this latter policy is even relevant given the date of Ms. Hall’s claim, because Genesis’s Commercial Excess Policy coverage is predicated on the existence of coverage flowing from the'underlying Pinnacle policy. The Genesis policy defines an insured in a similar manner to the Pinnacle policy, extending insured status to entities “only to the extent the ‘Named Insured’ [Brown] has agreed to do so in writing prior to an occurrence.” Because there was nó agreement to name Quest as an additional insured for purposes of professional liability coverage, for the reasons stated above, Quest is not an insured for professional liability under the Genesis policy.
Finally, Quest argues that Pinnacle and Genesis waived their rights to deny coverage by not responding to Quest’s demand for coverage in a timely manner. Because the claim against Quest for general liability was not covered, and Quest was not an insured under the professional liability section', neither Pinnacle nor Genesis had a duty to defend it. Absent such duty, estoppel cannot be employed to expand coverage to Quest. “The relevant cases are clear * * * that the doctrine of estop-pel cannot be used to enlarge coverage beyond that which is set out in the policy.” General Accident Insurance Co. of America v. American National Fireproofing, Inc., 716 A.2d 751, 755 (R.I.1998).
ÍY
Conclusion
For the reasons stated herein, we affirm the judgment of the Superior Court. The record of this case shall be returned to the Superior Court.

. Precisely how the test went astray is a matter of some dispute. Brown argues that Quest violated the policies set forth in the Professional Services Agreement (PSA) by *951 failing to send the test sample to the nearest facility and, as a result, the test was not performed. Quest argues that the error was caused by a Brown employee who was covering the Quest desk during lunch.

. This letter, giving Pinnacle written notice of a potential claim, triggered the 2005/2006 policy year as the operant policy year for this dispute. Accordingly, there is no need to consider any later policies.

. It is not clear from the record whether Quest obtained the necessary insurance or from whom the insurance may have been obtained.

. In Ho-Rath v. Rhode Island Hospital, 89 A.3d 806 (R.I.2014), a case involving the statute of limitations for medical malpractice actions, we opined that laboratories such as Quest are not included within this state's statutory definition of medical malpractice. See G.L.1956 § 5-37-1(8). In the instant case, however, the specific language agreed to in the contractual PSA provides an arguably broader basis than the narrower language in the medical malpractice statute.