**Supreme Court**

No. 2013-359-Appeal.
(PC 12-5088)

Medical Malpractice Joint Underwriting    :
    Association of Rhode Island

v.              :

Charlesgate Nursing Center, L.P., et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Medical Malpractice Joint Underwriting   :
      Association of Rhode Island

v.               :

Charlesgate Nursing Center, L.P., et al.   :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** This insurance-coverage dispute presents a novel legal question regarding an insurer's duty to defend that arises from a set of tragic circumstances involving the alleged sexual assault of a nursing home resident. The plaintiff, Medical Malpractice Joint Underwriting Association of Rhode Island (JUA), sought a declaratory judgment from the Superior Court to establish that it owed no duty to defend its insured, Charlesgate Nursing Center, L.P. (Charlesgate), two of Charlesgate's general partners, and two of its employees (collectively Charlesgate defendants),[1] against the allegations set forth in a separate civil action[2] filed by the administrator of the estate of a former resident of Charlesgate (complaint or estate's complaint). The JUA now appeals from the judgment denying its motion for summary judgment and granting the Charlesgate defendants' cross-motion for summary judgment on their counterclaim for declaratory judgment. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] The defendants named in the declaratory-judgment action include: Charlesgate Nursing Center, L.P. (Charlesgate), Davenport Associates, LTD., Paul S. Davenport, Lynda Gaboriault, and Sandra James (collectively Charlesgate defendants).

[2] The underlying civil action, docketed as PC 2012-1071, is currently pending in the Superior Court.

# I

## Facts and Procedural History

This appeal proceeds from an alleged sexual assault that purportedly occurred at the Charlesgate Nursing Center in June 2009. From December 2008 to December 2009, the JUA insured Charlesgate under a policy (JUA policy or policy), which provided coverage for both: (1) hospital professional liability (HPL) and (2) commercial general liability (CGL). In June 2009, a fifty-six-year-old woman, suffering from Huntington's disease and residing at and in the care of Charlesgate, claimed that she was the victim of a sexual assault perpetrated by Josiah Ajibade Olowoporoku,[3] an employee and certified nursing assistant (CNA) at Charlesgate. The resident passed away on October 17, 2011. On February 28, 2012, her son, in his capacity as administrator of her estate, filed suit in the Superior Court against Charlesgate, along with its partners, Davenport Associates, LTD., Paul S. Davenport, and its employees, Lynda Gaboriault, Sandra James, and Olowoporoku.

To resolve this appeal, this Court must determine whether the allegations contained in the estate's complaint bring the injury complained of within the coverage of the insurance policy. Accordingly, we confine our recitation of the facts to only those alleged in the estate's complaint, mindful that at this stage of the proceedings no facts have been adjudicated by a judge or jury. The complaint details a terrible sequence of events occurring at Charlesgate, beginning on June 16, 2009, when Olowoporoku sexually and physically assaulted the resident in her room. At the time of the assault, defendant Sandra James, a CNA, was at the nurse's station where she heard the resident's cries for help, but she did not respond. Instead, James reported the resident's screams to defendant Gaboriault, her colleague and a registered nurse at Charlesgate, but

---

[3] Olowoporoku was subsequently found by a jury not guilty of all criminal charges relating to these allegations.

Gaboriault also failed to respond.  At some point that day, the resident informed Sharon Scott, a medical technician at Charlesgate, that she had been raped by Olowoporoku, and Scott reported the incident to Gaboriault on June 16 and again on June 17.  Also on June 17, the resident reported the assault to James.  According to the complaint, Charlesgate continued to employ Olowoporoku even after the resident had informed several Charlesgate employees of his alleged misconduct.

In an affidavit, the administrator of the resident's estate stated that his grandmother received a call from Charlesgate on June 18, 2009, notifying her of the alleged sexual assault of his mother.  Thereafter, he went to Charlesgate on June 18 at which time he "insisted" that Charlesgate "immediately report the incident to the police department."  The same day a rape kit was administered to the resident at Women and Infants Hospital.  The estate alleges that, after the assault but prior to the administration of the rape kit, the resident was given at least three bed baths and one shower at Charlesgate.  The estate asserts in its complaint that the "results of the rape kit administered on June 18, 2009 revealed bruising, a laceration, excoriation, and trauma or penetration to the vaginal area."

In addition to these factual allegations, the estate's complaint contained six counts, including: negligence against Charlesgate (count 1), Davenport Associates (count 2), Davenport (count 3), Gaboriault (count 5), and James (count 6); and assault and battery against Olowoporoku (count 4).  With regard to the negligence counts, the complaint set forth specific allegations against the Charlesgate defendants, including the failure: to properly supervise, train, or screen its employees; to provide proper security measures; to report that a resident had been abused or mistreated within twenty-four hours in accordance with G.L. 1956 § 23-17.8-2;[4] and to

---

[4] General Laws 1956 § 23-17.8-2 provides, in pertinent part, that:

discipline its employees following the alleged sexual assault. As a direct and proximate result of this alleged negligence, the estate claims that the resident suffered "severe personal injuries, shock and injury to her nervous system, extreme pain and suffering, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, severe emotional distress, and was otherwise injured and damaged."

After receiving notice of the estate's complaint, the JUA issued a reservation of rights letter and initiated an investigation to determine whether it had a duty to defend the Charlesgate defendants under the policy. After conducting its review, the JUA concluded that: "no defense coverage is afforded to Charlesgate or the other insureds referenced above as to the [estate's complaint] and, thus, at this juncture, no indemnity coverage under either HPL or the CGL insurance coverage afforded by the JUA." In reaching this conclusion, the JUA reasoned that (1) the alleged sexual assault did not constitute a "medical incident" within the ambit of HPL coverage, and (2) the alleged sexual assault "cannot be construed as an accident under any definition" and therefore is not an "occurrence" within the meaning of the CGL insurance coverage.

Subsequently, the JUA filed the instant declaratory-judgment action in Superior Court seeking a declaration that it has no duty to defend the Charlesgate defendants against the

---

"(a) Any physician, medical intern, registered nurse, licensed practical nurse, nurse's aide, orderly, certified nursing assistant * * * or any person, within the scope of their employment at a facility or in their professional capacity, who has knowledge of or reasonable cause to believe that a patient or resident in a facility has been abused, mistreated, or neglected shall make, within twenty-four (24) hours or by the end of the next business day, a telephone report to the director of the department of health or his or her designee for those incidents involving health care facilities * * *."

- 4 -

allegations set forth in the estate's complaint.[5]  The Charlesgate defendants responded by filing a two-count counterclaim.  In the first count, they requested a declaratory judgment establishing that the JUA has a duty to defend each of the Charlesgate defendants in the action by the estate.  In the second count, they sought damages for the JUA's alleged breach of contract based on its refusal to defend the Charlesgate defendants in the suit.

In January 2013, the JUA filed a motion for summary judgment in its declaratory-judgment action.  In February 2013, the Charlesgate defendants filed an objection along with a cross-motion for summary judgment with regard to the first count of their counterclaim requesting the declaratory judgment.[6]  A hearing on the parties' cross-motions for summary judgment occurred in the Superior Court on May 14, 2013.  On May 17, 2013, an order was entered denying the JUA's motion for summary judgment and granting the Charlesgate defendants' cross-motion for summary judgment with respect to the declaratory-judgment count of their counterclaim.  The order specified that the JUA owed a duty to defend Charlesgate, Davenport Associates, Davenport, Gaboriault, and James against the claims alleged in counts 2, 3, 5, and 6 of the estate's complaint.  The JUA filed a motion, which was joined by the Charlesgate defendants, requesting an entry of final judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure.  This motion was granted and subsequently a Rule 54(b) judgment was entered.[7]  On July 31, 2013, the JUA filed a timely notice of appeal.

---

[5] The estate was also named as a defendant in the declaratory-judgment action.

[6] Specifically, count 1 of the Charlesgate defendants' counterclaim requested a declaration that the JUA is contractually obligated to defend each of said defendants based on the allegations in counts 2, 3, 5, and 6 of the estate's complaint.

[7] After the entry of the judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, the sole count remaining in the declaratory-judgment action is the breach-of-contract claim, which is the second count of the Charlesgate defendants' counterclaim.

## II

## Standard of Review

This Court examines an appeal from cross-motions for summary judgment de novo. Quest Diagnostics, LLC v. Pinnacle Consortium of Higher Education, 93 A.3d 949, 951 (R.I. 2014). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." Id. (quoting Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 424 (R.I. 2013)). "Thus, [s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Id. (quoting Peloquin, 61 A.3d at 424-25).

"An insurance policy is contractual in nature[.]" Derderian v. Essex Insurance Co., 44 A.3d 122, 127 (R.I. 2012) (quoting Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island, 18 A.3d 495, 498 (R.I. 2011)). Accordingly, when interpreting the disputed terms of an insurance policy, we must do so in accordance with the rules of construction that govern contracts. Nunez v. Merrimack Mutual Fire Insurance Co., 88 A.3d 1146, 1149 (R.I. 2014). "It is well-settled that this Court shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." Id. (quoting Koziol v. Peerless Insurance Co., 41 A.3d 647, 650 (R.I. 2012)).

In order to determine whether the terms of a policy are ambiguous, "we give words their plain, ordinary, and usual meaning." Derderian, 44 A.3d at 128 (quoting Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co., 11 A.3d 1078, 1083 (R.I. 2010)). "The Court considers the policy in its entirety and does not establish

ambiguity by viewing a word in isolation or by taking a phrase out of context." Id. (quoting Bliss Mine Road Condominium Association, 11 A.3d at 1083). When a policy term is found to be ambiguous, this Court has clearly established that "the policy will be strictly construed in favor of the insured and against the insurer." Id. at 127 (quoting Sjogren v. Metropolitan Property and Casualty Insurance Co., 703 A.2d 608, 610 (R.I. 1997)). "Indeed, as this Court often has said, we shall 'refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present.'" Koziol, 41 A.3d at 651 (quoting Bliss Mine Road Condominium Association, 11 A.3d at 1083).

## III

## Discussion

The precise language of the JUA policy lies at the heart of this appeal. As such, all three parties' arguments center on core terms in the CGL and HPL coverage forms of the JUA policy. On appeal, the JUA argues that the language set forth in the estate's complaint does not trigger HPL coverage under the policy because there was no "medical incident" alleged.[8] With regard to CGL coverage, the JUA avers that the sexual assault alleged in the complaint does not constitute an "occurrence," which is defined in the policy as an "accident."

The Charlesgate defendants counter that the alleged negligence claims against them are indeed an "occurrence" under the terms of the CGL coverage in the policy. In addition, the Charlesgate defendants argue that neither the sexual act nor the criminal act exclusion applies

---

[8] We do not address the arguments with respect to potential HPL coverage under the JUA policy because the Charlesgate defendants, as the insured parties under the JUA policy, do not contend that they are entitled to HPL coverage under the terms of the policy. Nevertheless, we are mindful that the estate, for its part, argues that the complaint triggers HPL coverage under the "pleadings test" because it alleged a "medical incident" as defined by the JUA policy.

- 7 -

because none of these defendants are alleged to have committed sexual or criminal acts.[9]  In terms of CGL coverage, the estate largely mirrors the argument of the Charlesgate defendants in that the language in the complaint does allege an "occurrence," as defined in the JUA policy, based on the proximate cause of the injuries alleged.  Finally, the estate asserts that the HPL and CGL coverage exclusions for criminal and sexual acts are not applicable in this case.

It is well settled in Rhode Island that the "pleadings test" is applied in order to ascertain whether an insurer has a duty to defend an insured. Peerless Insurance Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995).  "That test requires the trial court to look at the allegations contained in the complaint, and 'if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff.'" Id. (quoting The Employers' Fire Insurance Co. v. Beals, 103 R.I. 623, 632, 240 A.2d 397, 402 (1968), abrogated by Peerless Insurance Co., 667 A.2d at 789 on other grounds).  Moreover, in Peerless Insurance Co., we recognized that, although the blind application of the "pleadings test" may lead an insurer to defend an insured against "'groundless, false or fraudulent' suits," the insurer is nevertheless bound to do so. See id. (quoting Beals, 103 R.I at 631, 240 A.2d at 402).  "[I]n other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend." Beals, 103 R.I. at 632, 240 A.2d at 403.

In its arguments, the JUA urges this Court to treat all the facts alleged in the complaint as averring only "a violent, intentional sexual assault."  We decline to take such a narrow view of

---

[9] We note that we need not address the arguments made by the Charlesgate defendants with regard to the sexual and criminal act exclusions in the JUA policy.  Although the JUA raised this argument in its prebriefing statement, it did not raise the argument in its full brief before this Court.  In fact, the JUA explicitly acknowledged in its reply brief that it was not raising any argument that the "sexual or criminal act exclusions of the CGL policy apply."  This was confirmed by counsel for the JUA at oral argument.

the facts alleged. The complaint also includes independent factual allegations offered in support of the claims of negligence on the part of the Charlesgate defendants. Furthermore, the Charlesgate defendants are the insureds seeking coverage under the JUA policy, not Olowoporoku who allegedly raped the resident in her room. As such, there are no allegations of intentional or sexual activity on the part of the Charlesgate defendants set forth in the complaint. Accordingly, in reviewing the complaint alongside the JUA policy, we focus our attention on the factual allegations of negligence with regard to each of the respective Charlesgate defendants. Under well-settled Rhode Island law, "[w]e confine our analysis to the four corners of the policy, viewing it 'in its entirety, affording its terms their plain, ordinary and usual meaning.'" Allstate Insurance Co. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013) (quoting Casco Indemnity Co. v. Gonsalves, 839 A.2d 546, 548 (R.I. 2004)). We begin our analysis by examining the contractual language of the policy.

The CGL coverage is afforded to the Charlesgate defendants under an endorsement to the JUA policy. The cornerstone of the CGL policy is the term "occurrence."[10] The policy offers coverage to Charlesgate only for the risks of "bodily injury" or "property damage" that are caused by an "occurrence." The terms of this coverage are set forth in the policy as follows:

> "SECTION I – COVERAGES
>
> "COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> > "1. Insuring Agreement

---

[10] Black's Law Dictionary defines "occurrence-based liability insurance," such as the CGL coverage in the JUA policy, as "[i]nsurance that covers bodily injuries or property damage suffered during the policy period. Each instance of injury or damage is an 'occurrence' that may trigger an insured's entitlement to benefits. The terms of occurrence-based liability insurance policies are usu[ally] broad, limited only by specific exclusion." Black's Law Dictionary 924 (10th ed. 2014) (emphasis added).

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

"* * *

"b. This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]"

The "Definitions" section of the policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." It also defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The issue of whether the JUA owes the Charlesgate defendants a duty to defend them in the estate's underlying suit hinges on whether the facts alleged in the estate's complaint constitute an "occurrence" to which CGL coverage potentially applies. By defining an "occurrence" as an "accident," the policy's definition offers little guidance on this inquiry because the word "accident" is not defined in the policy. Black's Law Dictionary defines "occurrence" as "[s]omething that happens or takes place; specif[ically], an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of the insured party. This specific sense is the standard definition of the term under most liability policies." Black's Law Dictionary 1248 (10th ed. 2014) (emphasis added). The legal term "accident" is also defined in Black's Law Dictionary, as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event

occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame * * *." Black's Law Dictionary at 18.

The plain and ordinary meaning of the term "accident" as "an unintended and unforeseen injurious occurrence" invites the threshold question of from whose perspective is the unforeseen occurrence to be assessed. The Charlesgate defendants argue that an "accident" must be defined from the viewpoint of the insured. The hearing justice was also persuaded that the term "accident" should be interpreted from "the perspective of the insureds." Rhode Island law dictates that "[t]he test to be applied is not what the insurer intended * * *, but what the ordinary reader and purchaser would have understood [the language] to mean." Ahlquist, 59 A.3d at 98 (quoting Pressman v. Aetna Casualty and Surety Co., 574 A.2d 757, 760 (R.I. 1990)). Moreover, the Black's Law Dictionary definition of "occurrence" similarly provides that this term is often defined or interpreted from the standpoint of the insured party in the context of insurance policies. Here, Charlesgate purchased an insurance policy from the JUA to secure CGL coverage against certain risks delineated under the terms of its policy. From the viewpoint of Charlesgate, the sequence of events that allegedly took place in June 2009 appears to be both unexpected and unforeseen. It was surely not the usual course of events when an employee, whom Charlesgate hired, supervised, and trained, was later alleged to have sexually assaulted one of its patients.

The JUA principally focuses on the intentional character of the alleged sexual assault to substantiate its position that the factual allegations set forth in the estate's complaint do not constitute an "accident." In support of this position, the JUA relies chiefly on three Rhode Island cases in which there was alleged intentional sexual misconduct and, ultimately, no duty to defend

- 11 -

on the part of the insurer. We observe that the factual allegations and policy language at issue in the instant matter distinguish it from these cases.

Moreover, in our opinion, two of the three cases, <u>Craven v. Metropolitan Property and Casualty Insurance Co.</u>, 693 A.2d 1022 (R.I. 1997) (mem.) and <u>Sanzi v. Shetty</u>, 864 A.2d 614 (R.I. 2005), are inapposite. In <u>Craven</u>, 693 A.2d at 1022, the named insured in a homeowner's policy sought a declaratory judgment that his insurer was required to defend him against claims of sexual assault and negligent infliction of emotional distress. This Court, however, determined that the insurer had no duty to defend because allegations of intentional sexual misconduct did not fall within the risks covered by the insured's policy. <u>Id.</u> at 1023. Similarly, in <u>Sanzi</u>, 864 A.2d at 615-16, a pediatric neurologist and named insured sought a declaration that his insurer had a duty to defend him against claims by a former patient of alleged intentional sexual assault. This Court held that the insurer had no obligation to defend the doctor because the allegations of intentional sexual abuse did not fall within the "professional services" coverage of the doctor's professional liability policy. <u>Id.</u> at 619-20. Both of these cases present factual scenarios with a notable distinction from the present matter in that it was the individual insureds who personally faced allegations of intentional sexual misconduct. Ultimately, it was the intentional character of the insureds' actions that fell outside the covered risks in those respective policies. On the contrary, the Charlesgate defendants are not facing any allegations of intentional sexual misconduct, but rather only alleged negligence with regard to supervising, hiring, and training an employee, among other claims.

The JUA also relies on <u>American Commerce Insurance Co. v. Porto</u>, 811 A.2d 1185 (R.I. 2002), in support of its argument that the allegations of negligence—negligent hiring, training, and supervision, among others—in the complaint against the Charlesgate defendants do not

constitute an "accident" and therefore not an "occurrence" under the policy. The facts in Porto bear a striking resemblance to those in the present case in that the insured, Sebastian M. Porto, a Boy Scouts of America (BSA) troop leader, held a supervisory position over another troop leader who allegedly sexually assaulted a minor troop member. Porto, 811 A.2d at 1188-89. In that case, the minor victim and his parents advanced allegations in their complaint against Porto and the BSA for negligent hiring and supervision, separate and apart from their allegations of intentional sexual assault against the troop leader. Id.

Notwithstanding these factual similarities, the policy language at issue in Porto is quite different from the term at issue in the present case. The analysis in Porto centered on the "arising out of" policy language that delineated those bodily injuries covered and those excluded under the policy. Porto, 811 A.2d at 1197. This Court in Porto interpreted the "arising out of" language of a policy exclusion broadly and concluded that all of the allegations in the family's complaint have "a causal connection with, and thus arise out of" the troop leader's sexual misconduct. Id. Accordingly, in Porto, we affirmed summary judgment in favor of the insurer, concluding that it owed no duty to defend its insured. Id. at 1201-02.

At the summary-judgment hearing in the present case, the hearing justice declared the Porto case as "significant in the analysis of this matter" but nevertheless proceeded to distinguish the present matter from the result we reached in that case. In doing so, he reasoned that:

> "in Porto the Supreme Court said that one of the distinguishing factors [in that case] was that there were no discrete injuries alleged in the family's complaint that ar[o]se solely out of Porto's alleged negligence.
>
> "That's simply not the case here. The allegations in th[is] case are not only creative, but there are factual allegations that are made in the complaint by the plaintiffs that Charlesgate and its employees acted in a particular way or failed to act in a particular way that added to the injuries caused by the CNA who committed

- 13 -

the sexual act. So it may be that Charlesgate is not responsible for damages as great as the CNA, but there's certainly a decision to be made there."

We agree with the hearing justice in this regard.[11] Furthermore, we emphasize that, in Porto, this Court examined the language of a policy exclusion specifically related to sexual molestation. Porto, 811 A.2d at 1197. In contrast, here we are confronted with the core policy coverage terms "accident" and "occurrence." Therefore, we need not evaluate the estate's claims of negligent hiring and supervision in the context of a policy exclusion for sexual molestation. Moreover, the JUA has made it clear that, although the policy includes sexual and criminal act exclusions, it is not arguing on appeal that either of these exclusions in the CGL policy applies. On balance, we find that the JUA's resolute reliance on our Porto analysis in the context of a policy exclusion is misplaced. As such, this case presents us with a novel inquiry distinct from this Rhode Island precedent.

The hearing justice declined to adopt the JUA's narrow reading of "occurrence" within the policy, which he dismissed as "somewhat restrictive." Conversely, the hearing justice was persuaded that the term "accident" should not only be interpreted from the perspective of the insured party, but also that it should be interpreted more broadly than the JUA suggests. We agree. This Court does not consider the subjective intent of the parties, but rather "the intent expressed by the language of the contract." Derderian, 44 A.3d at 128 (quoting Bliss Mine Road Condominium Association, 11 A.3d at 1083-84). In accordance with this principle, we consider

---

[11] In discussing complaints drafted with both intentional and negligent allegations, we are mindful of the potential for "creative" pleadings without an appropriate factual predicate. We pause to note our concern with opening the door to such a disfavored practice. This Court echoes the point made by the hearing justice that the factual allegations set forth in the estate's complaint are more than merely "creative." In the instant matter, the complaint includes not only allegations of negligence with regard to the Charlesgate defendants, but also facts alleged in support of those negligence claims.

the term "accident" in the context of the policy as a whole. See id. In essence, the various arguments asserted by the JUA contend that, because of the intentional nature of the alleged sexual assault by a Charlesgate employee, there was no "accident" and therefore no "occurrence" under the policy. We are of the opinion that those arguments ignore other provisions—the sexual act and intended-injury exclusions[12]—in the policy.

If we adopted the JUA's narrow reading of "accident," then that reading would obviate the need for some exclusions included in the policy. The intended-injury and sexual act exclusions would serve no purpose if all intended injuries and injuries arising out of sexual acts were excluded in the first instance by the terms of the policy itself. See King v. Dallas Fire Insurance Co., 85 S.W.3d 185, 186, 192-93 (Tex. 2002). The JUA is effectively advocating for this result by claiming that the factual allegations of negligence in the estate's complaint do not constitute an "accident." This interpretation of the policy language would render both exclusions mere surplusage. We decline to endorse such a reading of the term "accident" within the context of the JUA policy.

We are satisfied that the JUA has a duty to defend the Charlesgate defendants against the allegations of negligence set forth in the complaint. This Court has articulated a clear mandate

---

[12] The pertinent provisions in the JUA policy provide that:
> "2. Exclusions
> "This insurance does not apply to:
> "a. Expected Or Intended Injury
> "'Bodily Injury' or 'property damage' expected or intended from the standpoint of the Insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.
> "* * *
> "r. Sexual Acts
> "'Bodily Injury' arising out of sexual activity, sexual misconduct, sexual abuse or sexual harassment by the Insured or any person for whom the Insured is legally responsible."

that "any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured." Beals, 103 R.I. at 632, 240 A.2d at 403. Furthermore, the "pleadings test" establishes an unequivocal duty to defend on the part of the JUA when the complaint in the underlying action contains factual allegations that bring the case "within or potentially within the risk coverage of the policy." Id. Accordingly, we affirm both the hearing justice's grant of summary judgment in favor of the Charlesgate defendants and the denial of the JUA's motion for summary judgment with regard to the declaratory-judgment count of the Charlesgate defendants' counterclaim.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record of this case shall be returned to the Superior Court.


**TITLE OF CASE:**     Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P., et al.

**CASE NO:**     No. 2013-359-Appeal.
(PC 12-5088)

**COURT:**     Supreme Court

**DATE OPINION FILED:**  June 5, 2015

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Luis M. Matos

**ATTORNEYS ON APPEAL:**

For Plaintiff:  David P. Whitman, Esq.

For Defendants:  Erica M. O'Connell, Esq.

Mitchell R. Edwards, Esq.