May 26, 2017

**Supreme Court**

No. 2015-311-Appeal.
(PC 09-5894)

Albert J. Branch Revocable Trust Dated       :
March 4, 1993, Albert J. Branch, Trustee

v.                              :

Interstate Battery Center et al.           :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Albert J. Branch Revocable Trust Dated    :
March 4, 1993, Albert J. Branch, Trustee

v.               :

Interstate Battery Center et al.       :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Indeglia, for the Court.** Albert J. Branch Revocable Trust Dated March 4, 1993, and Albert J. Branch Trustee (plaintiffs) appeal from the Superior Court's grant of summary judgment in favor of the defendants: Interstate Battery Center, Evanna, Inc., Interstate Battery System of Central Mass., Inc., Kenneth L. Machonis, in his capacity as President of Interstate Battery System of Central Mass., Inc., and Charles Trottier, in his capacity as District Manager of Interstate Battery System of Central Mass., Inc. (defendants). This breach-of-contract case stems from a dispute over an alleged commercial lease agreement (lease) between the plaintiffs, owners of property located at 492 Reservoir Avenue in Cranston, Rhode Island (the premises), and the defendants, who plaintiffs contend breached the terms of the lease. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

# I

## Facts and Travel

### A

### The Corporate Enigma

Before discussing the facts pertinent to this appeal, we briefly outline the confusing set of corporate entity-defendants that undergird this case.

The defendant Kenneth Machonis was the president of Interstate Battery System of Central Mass., Inc., located at 139 Washington Street in Auburn, Massachusetts, which Machonis described as a wholesale car-battery distributorship that routinely serviced racks of batteries and delivered them to commercial garages. Machonis organized a separate corporation, Evanna, Inc., to "distance a new program from [his] existing corporation of many years." This "new program" was Interstate All Battery Center, a retail operation that sold a broader array of batteries than Interstate Battery System of Central Mass., Inc., including batteries for cars, cellphones, laptops, watches, etc.[1]

In his deposition, Machonis explained that Evanna, Inc., which was incorporated under the laws of Massachusetts, was doing business as Interstate All Battery Center. In other words, as former employee Charles Trottier[2] explained, Interstate All Battery Center was a franchise and "just the name of the stores," and it was part of Evanna, Inc. Additionally, Machonis indicated that he operated an Interstate All Battery Center, separate and distinct from the wholesale distributorship, at 139 Washington Street in Auburn, Massachusetts, the same location

---

[1] It appears that Interstate All Battery Center operates nationwide as franchises that are available through yet another corporation, Interstate Battery Franchising & Development, Inc., a subsidiary of Retail Acquisition & Development, Inc., which is a subsidiary of Interstate Battery System International, Inc.

[2] Trottier worked for Interstate Battery System of Central Mass., Inc. for approximately three to four years under the title of "district sales" or "regional sales."

as that of Interstate Battery System of Central Mass., Inc. Critical to this case, an Interstate All Battery Center was operated on the premises at 492 Reservoir Avenue in Cranston.

**B**

**The Lease**

The plaintiffs allege that on November 5, 2005, they entered into the lease with defendants for defendants' continued operation of an Interstate All Battery Center at the premises.[3] The lease appears to include fourteen pages of terms and conditions as well as an appended lease exhibit (exhibit) that listed further details, including the annual rent, the lease's term, and the expiration date of October 31, 2010.[4] The exhibit listed the landlord as "Albert J. Branch Trustee," and the tenant as both "Interstate Battery Center" and "Interstate Battery," with the latter appearing above a line for the tenant's signature. The exhibit described the property's "[p]ermitted [u]se" as the "[s]ale of goods, products and services of Interstate Battery's product lines."

Joseph Branch, plaintiff Albert Branch's son, claimed that he had negotiated the lease with defendants on plaintiffs' behalf.[5] In his deposition, Branch stated that he had dealt directly with Trottier, whom he knew as the district manager of "Interstate Battery." He described Trottier as "the one man that was in charge, anything, I go through him as far as leases and

---

[3] We note that, prior to allegedly entering into the lease with plaintiffs, defendants had already occupied the premises. On or about July 1, 2004, Evanna, Inc. entered into a sublease agreement (sublease) with JN Phillips Auto Glass for Interstate All Battery Center to operate on a portion of the premises. The final page of the sublease bears Machonis's signature and states, under lessee "Evanna, Inc. Kenneth Machonis, President."

[4] It is noteworthy that the lease appears to begin with a page numbered "2." Additionally, the opening page of the lease specifies: "THIS LEASE is hereby made as of the Execution Date referred to in the Lease Data Exhibit attached to the front of this Lease and made a part hereof, by and between the Landlord and Tenant named in said Lease Data Exhibit." (Emphasis added.)

[5] To avoid confusion, we shall refer to Joseph Branch by his last name; when discussing his father, Albert Branch, we shall include his full name.

whatnot." When asked whether Trottier wore anything that distinguished him from the other Interstate All Battery Center employees when they met on the premises, Branch stated, "He had a cell phone on his side, and just looked like he was in charge, just by appearance and perception." He also noted that Trottier had a "green Interstate Battery shirt on and black khakis" and recalled that Trottier gave him his business card listing the title, "District Manager." Branch also noted, however, that, when he asked Trottier whether he wanted to extend the rental of the property, Trottier emphasized that he would need to confer with his boss because "he couldn't give [him] a decision himself." Although Branch did not know who Trottier's boss was, he stated that Trottier made it clear that "his boss would make the decisions."

Branch stated that Trottier indicated during their next conversation that his boss was interested in extending the lease; so Branch prepared a lease and met Trottier at the premises. According to Branch, Trottier indicated that he needed to take the lease to the Auburn location for a signature "by whoever took care of his end of it." Branch noted that no one signed the lease in his presence and that he was unaware of whose signature appeared on it; however, he confirmed that his father's signature was not on the lease. Regarding the signature on the exhibit, Branch indicated that "Albert J. Branch Trustee" appeared to be his father's signature. He could not, however, make out whose signature appeared as "Tenant."

Although Branch confirmed that he understood that the tenant on the premises was an entity and not Trottier, he could not recall the name of the president of the corporation that occupied the premises. When asked whether he was aware of the name that appeared on the sublease with JN Phillips Auto Glass (under lessee "Evanna, Inc. Kenneth Machonis, President"), he replied, "No, I always thought it was Interstate Battery, a very reputable

company." Branch also indicated that he only learned of Machonis in the context of this litigation.

The defendants took the position that Evanna, Inc. had a month-to-month tenancy with plaintiffs for the Interstate All Battery Center on the premises. In his deposition, Machonis indicated that he was the president of Evanna, Inc., describing his role with the corporation as: "[t]he buck stops here." However, he was not aware of the point at which Interstate All Battery Center ceased operations at the premises, nor did he know whether Evanna, Inc. or Interstate All Battery Center executed a lease agreement for the premises. It was his statement that he first saw the lease in the context of this litigation. He also indicated that, in exchange for occupying a portion of the premises, Interstate All Battery Center paid rent, but he could not recall the rent amount. Machonis stated that Interstate All Battery Center closed and thus vacated the premises prior to June of 2008. He confirmed that Evanna, Inc. filed a request for withdrawal of Evanna, Inc. as a business in Rhode Island in December of 2008. Machonis indicated that business records that might have reflected accounting ledgers, check registers, etc. for Evanna, Inc. from 2004 until it ceased operations in 2008 were lost "when the building [presumably in Auburn] collapsed." In reference to the same timeframe, Machonis could not recall who was employed by Evanna, Inc. other than a person named Nathan Stawiecki.

Stawiecki, who worked as a store manager for Interstate All Battery Center from 2004 to 2005 and as manager of Evanna, Inc. and Interstate Battery System of Central Mass., Inc. in November of 2007, was also deposed. It was his testimony that he purchased Interstate Battery System of Central Mass., Inc. from Machonis in April of 2010. Although he noted that he had worked out of the Auburn location, he said that he had responsibilities with respect to the premises in Cranston because his job included day-to-day operation oversight of that Interstate

All Battery Center, which required handling any issues and visiting the premises when necessary. His explanation of the corporate entity-defendants largely matched the summary provided in Machonis's deposition.[6] During his deposition, Stawiecki identified photographs of signs at the front of the premises, which notified customers that the store had moved. He recognized the handwriting on the signs as that of a former manager of Interstate Battery System of Central Mass., Inc. He also noted that the storefront signs directed customers to call the phone number for Interstate Battery System of Central Mass., Inc. for their battery needs.

A deposition was also taken of Charles Trottier, who worked as a district sales manager for Interstate Battery System of Central Mass., Inc. In it, he confirmed that Interstate Battery System of Central Mass., Inc. ran a store on the premises in Cranston. When asked, however, for the name of the actual "business entity running the store," Trottier indicated that it was Evanna, Inc. Trottier noted that he received his paycheck from Interstate Battery System of Central Mass., Inc., rather than Evanna, Inc. or any other entity. Trottier recalled that he occasionally visited the premises in Cranston when he worked for Interstate Battery System of Central Mass., Inc., to make deliveries, pick up merchandise for deliveries, determine whether the store had any new leads, or check in on the store's progress. He also stated that "[a]ny payments or things of that nature [for the Cranston premises] would have been handled by Leah in the main office." Trottier clarified that he was referencing Leah Murray of Interstate Battery System of Central Mass., Inc. Finally, when asked about the lease and whether he had any recollection of

---

[6] For example, he described Interstate Battery System of Central Mass., Inc. as a distinct corporation from the entity that operated at the premises in Cranston. He described the Interstate All Battery Center as "a retail operation which had every battery * * * known to man, cellphones, laptops, watch batteries, car batteries, commercial batteries." Alternatively, he summarized Interstate Battery System of Central Mass., Inc., as a car battery distributorship that "predominantly put[s] racks of batteries on consignment to garages, and we have trucks that go around and service them on a rout[ine] basis."

discussing it with anyone that he understood to be a landlord, he replied, "[T]he only thing I recall is the fact that we were told that JN Philips was moving out of the building, their lease was up and the sub-lease they had with them, that there would be some other lease * * * ." Trottier added, "I told the gentlemen that had contacted us * * * that would have to be through the office, actually, it would be Leah that would be taking care of something along those lines. I can gather up the information for her, but that would be her responsibility."

**C**

**Travel**

On October 8, 2009, plaintiffs brought suit against defendants, alleging (1) breach of contract, (2) breach of implied contract/implied-in-fact contract, (3) unjust enrichment, and (4) quantum meruit. The plaintiffs also sought attorney's fees and costs. On February 26, 2010, plaintiffs moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. In their accompanying memorandum of law, plaintiffs argued that no genuine issues of material fact existed with respect to the allegations of breach, abandonment, or damages stemming from the alleged breach. The plaintiffs asserted that the matter could be decided as a matter of law because: (1) Trottier, as district manager, bound Interstate Battery System of Central Mass., Inc. to the lease terms under agency principles; (2) Interstate Battery System of Central Mass., Inc. breached a contractual agreement by abandoning the tenancy without notice; and (3) damages and attorney's fees were readily assessable and should be entered for plaintiffs.

The plaintiffs' motion for summary judgment was heard before a justice of the Superior Court on July 20, 2010. On the issue of apparent authority, the motion justice observed: "But isn't apparent authority really a fact question? I mean, how do we resolve that on a summary judgment motion? I mean, actual authority, I can understand if he had a certification from the

corporation stamped, whatever else. But who knew what? When?" The motion justice denied the motion for summary judgment on the grounds that resolving the apparent-authority issue necessitated a factual determination by the factfinder. Specifically, he framed the factual issue as: "Did or did not this person have the apparent authority on behalf of Interstate Battery to enter into the contract? Or I guess even further: Was this person even known to Interstate Battery?" The motion justice determined that he could not answer this question at that point as a matter of law, and he found it necessary to hold a trial on the narrow factual issue of apparent authority.

## D

### The Motion Justice's Decision

On August 11, 2015, after further discovery, a different justice of the Superior Court heard the parties' cross-motions for summary judgment. The defendants argued that insufficient facts were provided to establish that Trottier had actual or apparent authority to enter into the lease and that, therefore, the proposition that any defendant was bound by the lease was unsupported. The defendants asserted that the motion justice could decide the authority issue as a matter of law, and they averred that any facts put forth through depositions were insufficient proof of actual or apparent authority because the record lacked any evidence that revealed that defendants authorized Trottier to act on their behalf or that Joseph Branch relied on this alleged authority.

In arguing that summary judgment should enter in their favor, plaintiffs reasserted many of the same arguments from their original summary-judgment motion. The plaintiffs submitted that Trottier, acting as an agent, sufficiently bound his principal, Interstate Battery System of Central Mass., Inc., to the terms of the lease and that Joseph Branch reasonably relied on Trottier's authority in negotiating and executing the lease. Because plaintiffs asserted that there

were no genuine issues of material fact with respect to the lease's breach and the associated damages, they submitted that the court should summarily decide the case in their favor.

The motion justice issued a bench decision on the parties' cross-motions for summary judgment and granted summary judgment in favor of defendants, finding no genuine issues of material fact. Although he recognized that "there clearly * * * appear to be some factual disputes, [he was] not sure they r[o]se to a genuine issue of material fact * * * ." First, the motion justice determined that summary judgment was appropriate because the lease listed the tenant as "Interstate Battery Center," which was "not a legal entity," as the name did not precisely match the name of any defendant-entity.

With respect to the lease itself, the motion justice noted that there was a question of whether the landlord signed it. He also noted that there was no evidence that the lease was delivered to the tenant. Based on the existence of "just so many deficiencies in this lease," the motion justice reasoned that summary judgment was proper because a valid lease was not established. In particular, he outlined what he opined was needed for a valid lease: someone with authority to sign, whether actual or apparent, an existing tenant, i.e., a legal entity or person, the landlord's signature, and delivery. The motion justice granted defendants' summary-judgment motion and accordingly deemed plaintiffs' motion for summary judgment moot. The plaintiffs timely appealed to this Court.

## II

### Standard of Review

"This Court examines an appeal from cross-motions for summary judgment de novo." 5750 Post Road Medical Offices, LLC v. East Greenwich Fire District, 138 A.3d 163, 166 (R.I. 2016) (quoting Medical Malpractice Joint Underwriting Association of Rhode Island v.

Charlesgate Nursing Center, L.P., 115 A.3d 998, 1002 (R.I. 2015)). We utilize the same standards employed by the motion justice when we review the Superior Court's judgment with respect to summary-judgment motions. Id. Summary judgment should enter "when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Charlesgate Nursing Center, L.P., 115 A.3d at 1002 (quoting Quest Diagnostics, LLC v. Pinnacle Consortium of Higher Education, 93 A.3d 949, 951 (R.I. 2014)). In so doing, "[w]e remain mindful of the fact that '[s]ummary judgment is an extreme remedy that should be applied cautiously.'" Hall v. City of Newport, 138 A.3d 814, 818 (R.I. 2016) (quoting Ferris Avenue Realty, LLC v. Huhtamaki, Inc., 110 A.3d 267, 279 (R.I. 2015)); see also North American Planning Corp. v. Guido, 110 R.I. 22, 25, 289 A.2d 423, 425 (1972) ("[S]o extreme a remedy should not be used as a substitute for a trial * * * .").

### III

### Discussion

The motion justice granted summary judgment for defendants based on what he described as "so many deficiencies in this lease." Although we are convinced that, in outlining these "deficiencies" the motion justice properly pinpointed relevant issues in his decision, we believe that he overlooked genuine disputes of material fact embedded within each.[7] Particularly, genuine issues of material fact existed in connection with: (1) which entity was bound under the

---

[7] In granting summary judgment, the motion justice crossed the line from finding issues to determining them. In doing so, he "exceeded the limits of his function in considering the motion for summary judgment." Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981); see also Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008) ("[T]he 'purpose of the summary judgment procedure is issue finding, not issue determination.'") (quoting Industrial National Bank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)).

lease; and (2) whether someone with authority sufficient to bind the tenant signed it.[8] Because of the fact-intensive nature of both of these inquiries, this case was not suitable for summary judgment.

First, the record evinces a sufficient factual dispute with respect to which entity, if any, was bound under the lease. The mere fact that the names appearing on the lease and the exhibit ("Interstate Battery Center" or "Interstate Battery") did not precisely match any named defendant-entity was not enough to dispose of this issue as a matter of law. Instead, a review of the record reveals contradictory deposition statements concerning which entity occupied the premises in Cranston. For instance, in his deposition, Trottier expressed that his then-employer, Interstate Battery System of Central Mass., Inc. "put a store" into the premises. He also indicated, however, that Evanna, Inc. "was actually the business entity running the store." Moreover, Branch testified that he was not aware of the name Evanna, Inc., which appeared on the lease; when asked about which entity he thought had operated on the premises, he replied, "I always thought it was Interstate Battery." Alternatively, in Machonis's deposition, he confirmed that Evanna, Inc. did business as Interstate All Battery Center at the premises. These statements, among others, which linked both Interstate Battery System of Central Mass., Inc., and Evanna, Inc. to the premises, gave rise to a fact-intensive inquiry reserved for the factfinder as to which entity occupied the premises.

---

[8] At the outset, we highlight that the motion justice also made findings with respect to whether plaintiff-landlord signed the lease and whether the lease was delivered. Because we are unaware, however, of any Rhode Island authority that identifies these issues as prerequisites to a valid lease agreement, we are convinced that the absence of the landlord's signature and the lack of delivery should not have fatally disposed of plaintiffs' claim. Even assuming, without deciding, that a valid lease requires delivery and the landlord's signature, submerged within each issue were questions of fact. See 49 Am. Jur. 2d Landlord and Tenant § 27 at 71 (2006) ("The existence of such a lease is a question of fact to be determined by consideration of all the facts and circumstances.").

Second, our <u>de novo</u> review of the evidence also evokes a genuine issue of material fact with respect to whether someone with authority sufficient to bind the tenant signed the lease. To start, a signature appeared under the line for "Tenant" on both the lease and the exhibit. In light of Branch identifying Trottier as the manager with whom he dealt in negotiating and executing the lease, Trottier's declaration in his deposition that the pertinent signatures looked as if they could possibly be his was sufficient evidence to at least create a triable issue of fact.

Because at least these two material factual issues warranted a trial on the merits, we are compelled to conclude that this case was not ripe for summary judgment.

**IV**

**Conclusion**

For the reasons stated herein, we vacate the Superior Court's judgment. The record shall be remanded to that tribunal.

Justice Flaherty did not participate.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Albert J. Branch Revocable Trust Dated March 4, 1993, Albert J. Branch, Trustee v. Interstate Battery Center et al. |
| **Case Number** | No. 2015-311-Appeal. (PC 09-5894) |
| **Date Opinion Filed** | May 26, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Nicholas Gorham, Esq.<br>David M. D'Agostino, Esq.<br><br>For Defendants:<br><br>Russell Bramley, Esq. |

SU-CMS-02A (revised June 2016)