**Supreme Court**

| | | |
|---|---|---|
| Roadepot, LLC et al. | : | No. 2015-347-Appeal. |
| | | No. 2015-348-Appeal. |
| v. | : | No. 2015-349-Appeal. |
| | | (KC 10-540) |
| Home Depot, U.S.A., Inc. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Roadepot, LLC et al.        :        No. 2015-347-Appeal.
No. 2015-348-Appeal.
v.        :        No. 2015-349-Appeal.
(KC 10-540)

Home Depot, U.S.A., Inc.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The construction of a sewer line by the Town of Coventry (Coventry) has generated litigation almost as prodigiously as it has carried effluent to the West Warwick sewer treatment plant. In the consolidated appeals now before this Court: (1) Roadepot, LLC and Keyserton, LLC (collectively, Roadepot) appeal from a partial summary judgment in favor of Home Depot, U.S.A., Inc. (Home Depot) obligating Roadepot to pay certain disputed sewer assessment charges; (2) Roadepot appeals from a judgment, following a bench trial on Home Depot's counterclaim, requiring Roadepot to reimburse Home Depot for sewer assessment charges paid by the latter from 2005 through 2014; and (3) Home Depot cross-appeals from the trial justice's decision limiting its request for prejudgment interest and denying its claim for late fees on the sewer assessment charges. For the reasons set forth in this opinion, we affirm the judgments in part and vacate in part, and we remand this case to the Superior Court to conduct further proceedings consistent herewith.

## I

### Facts and Procedural History

This is a commercial property dispute between a landlord (Roadepot) and a tenant (Home Depot). On July 23, 2004, Commerce Park Associates 3, LLC (Commerce Park) entered into a

ground lease agreement with Home Depot (the lease), leasing a portion of the Centre of New England (the property), located in the Town of Coventry, to Home Depot. Nicholas E. Cambio executed the lease for Commerce Park. A year later, in August 2005, Commerce Park sold the property to Roadepot, subject to the lease, thereby rendering Roadepot as Home Depot's landlord.

Article V of the lease governs taxes. Section 5.1(a) specifies that the tenant is responsible for paying "all [r]eal [e]state [t]axes, on the [p]remises" and defines "[r]eal [e]state [t]axes" as "all real estate taxes and assessments for betterments and improvements that are levied or assessed by any lawful authority on the [p]remises." Section 5.1(b) states in pertinent part:

> "Real [e]state [t]axes shall not include the following:
> "* * *
> "(v) any fees or other sums paid to a governmental authority in consideration of obtaining any of the [a]pprovals or utility service, specifically, excluding, impact, loophole and proffer fees. Landlord shall be responsible for paying, without contribution from [t]enant, all taxes and impositions described in clauses (i)-(v)."

Section 13.2 of Article XIII of the lease provides, in relevant part:

> "<u>Remedies Upon Landlord's Default</u>. Landlord shall only be deemed to be in default under the terms of this [l]ease in the event [l]andlord shall violate, neglect, or fail to observe, keep or perform any covenant or agreement required to be performed and observed by [l]andlord hereunder and any such default shall continue for a period of thirty (30) days after written notice to [l]andlord [if such default is by its nature not reasonably susceptible of being cured within such thirty (30) day period, such thirty (30) day period shall be extended as necessary to provide [l]andlord the opportunity to cure the default, provided [l]andlord within said period commences and thereafter diligently proceeds to cure such default without interruption until such cure is completed]."

In 2005, Coventry sent Commerce Park a sewer assessment bill to pay for the Fast Track Assessment.[1]  On September 15, 2005, Commerce Park forwarded the invoice from Coventry to Roadepot and requested Roadepot "make payments directly to * * * Coventry."  On October 11, 2005, Commerce Park forwarded the Coventry invoice to Home Depot along with a letter, explaining that the Fast Track Assessment was being challenged.  Home Depot then began making payments for the Fast Track Assessment annually.

On September 17, 2009, Home Depot sent Roadepot a fax, seeking payment for the Fast Track Assessment.  The fax was sent by Janet Murray, the senior property tax accountant at Home Depot, and included an attached copy of a 2009 Fast Track Assessment bill.  The fax expressed:

> "Attached is a copy of the 2009 [s]ewer [a]ssessment [b]ill in which the first installment is due by 09/30/09 according to my conversation with * * * Coventry. Based on my understanding of the lease, this bill is the landlord's responsibility."

On October 20, 2009, Roadepot sent Home Depot a letter concerning the Fast Track Assessment charges, which Roadepot described as a "municipal sewer assessment on the Coventry property."  The letter explained that Home Depot was "required to pay all sewer assessment and annual fees levied by * * * Coventry" under the lease.  The letter also explained that "[f]ailure to pay the September 2009 first quarter installment constitutes default on the part of Home Depot."  Roadepot's letter concluded that, if Home Depot did not cure the default within thirty days, Roadepot reserved the right to take action under § 13.1 of the lease.[2]  On

---

[1] In 2004, Coventry imposed the Fast Track Assessment to cover infrastructure costs associated with connecting Coventry's sewer system to the Town of West Warwick's sewer treatment plant. Commerce Park was assessed in the amount of $403,308.40, to be paid over a twenty-year period.

[2] Section 13.1 of Article XIII of the lease provides in relevant part:

> "<u>Remedies Upon Tenant's Default</u>.  In the event * * * (ii) [t]enant shall fail to observe or perform any * * * covenants and

November 16, 2009, Home Depot wrote a responsive letter to Roadepot, asserting that Roadepot is responsible for paying the sewer assessment bill issued by Coventry. Home Depot, however, continued to pay Coventry for the Fast Track Assessment through 2014.

On April 1, 2010, Roadepot filed a lawsuit against Home Depot seeking a declaratory judgment that Home Depot was responsible under the lease to pay the Fast Track Assessment. Thereafter, Home Depot filed a counterclaim, seeking a declaratory judgment that Roadepot was responsible for payment of the Fast Track Assessment as well as a counterclaim for breach of contract to recover the amounts Home Depot had already paid Coventry for the Fast Track Assessment. On November 21, 2013, Home Depot filed a motion for summary judgment. Roadepot objected to Home Depot's motion for summary judgment; and, on December 30, 2013, filed a cross-motion for summary judgment, to which Home Depot objected.

On January 27, 2014, the Superior Court heard the parties' motions and determined that there was "a genuine issue of material fact[.]" The hearing justice explained that she was "not satisfied that either party [had] addressed the issue [in] Article 5, [s]ection 5.1(b) of the lease"

---

agreements required to be performed and observed by [t]enant hereunder and any such default shall continue for a period of thirty (30) days after receipt by [t]enant of written notice from [l]andlord and [t]enant shall not thereafter cure such default [if such default is by its nature not reasonably susceptible of being cured within such thirty (30) day period, such thirty (30) day period shall be extended as necessary to provide [t]enant the opportunity to cure the default, provided [t]enant within said period commences and thereafter diligently proceeds to cure such default without interruption until such cure is completed] * * * then [l]andlord shall be entitled at its election, to exercise concurrently or successively, any one or more of the following rights:
   "(a) To bring suit for the collection of * * * amounts for which [t]enant may be in default, or for the performance of any other covenant or agreement of [t]enant hereunder, all without entering into possession of the [p]remises or terminating this [l]ease * * *."

- 4 -

and reasoned that "[t]he record reflects that neither party ha[d] addressed the meaning of the loophole and proffer fees which are contained in that section." On February 3, 2014, the Superior Court issued an order denying the motions.

On December 12, 2014, Home Depot filed a renewed motion for summary judgment. Roadepot objected and filed a cross-motion for summary judgment in January 2015. On January 26, 2015, a hearing was held on the motions before a second Superior Court justice.[3]

At the hearing, the trial justice explained:

> "So I think [the contract drafters] were saying that any impact, loophole, or proffer fees, even though that terminology is not utilized in Rhode Island, I think they were saying that those fees, that type of fee, would be the responsibility of the landlord. I think they start with the proposition that if it's not specifically provided for in the lease for payment by the tenant, that it would be the landlord's responsibility.
> "In this case, it is clear that the fee in question here, the sewer assessment fee over the years, it is not a tax. It is not an assessment for betterment or improvement, at least for the property in question. It might be an assessment for betterment and improvement of the sewer system, which is for the benefit of all the—well, all the people of Coventry that were tied in.
> "* * *
> "The lease is not ambiguous. I don't have to refer to parol evidence in the form of intent of the parties as expressed by their statements or otherwise."

In an order entered on February 11, 2015, the Superior Court granted Home Depot's motion for summary judgment and denied Roadepot's cross-motion for summary judgment on the issue of liability for payment of the Fast Track Assessment. The trial justice also denied Home Depot's motion for summary judgment on its counterclaim, finding that there were genuine issues of material fact to be resolved.

---

[3] We shall refer to the second Superior Court justice, who presided at the January 26, 2015, summary judgment hearing and the March 30, 2015, trial, as the trial justice.

- 5 -

On February 13, 2015, Roadepot appealed from the Superior Court's order.[4]  On March 30, 2015, the Superior Court held a nonjury trial on Home Depot's counterclaim for the amounts Home Depot had paid to Coventry for the Fast Track Assessment from 2005 to 2014.

John Tascione, Home Depot's director of real estate at the time Home Depot signed the lease, was the only witness to testify at trial.  He testified that Home Depot's vendor, who made the payments for Home Depot, mistakenly believed that the "sewer infrastructure charges" were for water usage.  He further testified that Cambio had sent a bill to Home Depot on October 11, 2005, and that Home Depot paid the Fast Track Assessment "under protest."  He explained that it was Home Depot's policy to pay bills, "especially assessments, if they were being billed by the [t]own" because failure to pay such bills "would be a breach of the lease" or could result in liens or eviction.

On May 4, 2015, the trial justice issued a decision, which was amended on May 11, 2015.  The trial justice ruled that Roadepot was responsible for paying the Fast Track Assessment.  The trial justice rejected Roadepot's argument seeking application of the voluntary payment doctrine; and, instead, he "employed a different analysis and practical application of the voluntary payment doctrine[,]" namely, the doctrine of unjust enrichment.  The trial justice determined that Home Depot was "only entitled to recover the benefit conferred upon Roadepot, that is, $388,657.21, representing the value of the Fast Track Assessment payments made by Home Depot from 2005 through 2014[,]" but that Home Depot was not entitled to recover the $16,847.22 it had incurred in late fees.

---

[4] Although prematurely filed, Roadepot's appeal is considered to be valid because final judgment was later entered. See Rhode Island Joint Reinsurance Association v. Santana-Sosa, 92 A.3d 192, 196 n.8 (R.I. 2014).

On May 12, 2015, Home Depot filed a motion to enter final judgment, including prejudgment interest. On May 26, 2015, the trial justice ruled that "interest [would] be awarded at the statutory rate from * * * September 17th, 2009, forward, the date * * * the cause of action accrued. Prior to that no interest [would] be added." The Superior Court further noted:

> "[I]t's true that the manner in which I approached the bulk of the claim—I say the bulk of the claim of Home Depot—was an equitable approach basically. * * * [I]t was mid-September in 2009 when Home Depot * * * wrote to [Roadepot] and said under the contract, basically, this is your responsibility. At that point, I think the claim became a contractual dispute, more legal in nature, and at that point, to borrow the terms from the statute, the interest statute, the cause of action accrued."

On July 3, 2015, judgment was entered in favor of Home Depot in the amount of $388,657.21, plus prejudgment interest in the amount of $92,315.17 and costs of $1,581.38. Both parties timely appealed from the judgment. All three appeals were consolidated for purposes of briefing and oral argument.

## II

### Discussion

### A

### Liability For Payment of Fast Track Assessment

We first address Roadepot's appeal from the summary judgment granted in favor of Home Depot on the issue of liability for payment of the Fast Track Assessment. Roadepot argues that the operative language in the lease is ambiguous and that, therefore, granting summary judgment was improper.

"This Court examines an appeal from cross-motions for summary judgment de novo." 5750 Post Road Medical Offices, LLC v. East Greenwich Fire District, 138 A.3d 163, 166 (R.I. 2016) (quoting Medical Malpractice Joint Underwriting Association of Rhode Island v.

Charlesgate Nursing Center, L.P., 115 A.3d 998, 1002 (R.I. 2015)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." Id. (quoting Medical Malpractice Joint Underwriting Association of Rhode Island, 115 A.3d at 1002). "Thus, [s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Id. at 166-67 (quoting Medical Malpractice Joint Underwriting Association of Rhode Island, 115 A.3d at 1002).

When reviewing leases, we apply Rhode Island law regarding contract interpretation. See Botelho v. City of Pawtucket School Department, 130 A.3d 172, 176 (R.I. 2016). When there is only one reasonable interpretation of a contract, the contract is deemed unambiguous. See id. In determining whether a contract is ambiguous, a court should read the contract in its entirety and "give words their plain, ordinary, and usual meaning." Id. (quoting JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I. 2014)). However, a reviewing court should not seek out ambiguity where there is none. Id. at 177. The court should consider "whether the language has only one reasonable meaning when construed * * * in an ordinary, common sense manner." Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 63 (R.I. 2005) (quoting Textron, Inc. v. Aetna Casualty and Surety Co., 638 A.2d 537, 541 (R.I. 1994)). "[I]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids." Botelho, 130 A.3d at 176-77 (quoting JPL Livery Services, Inc., 88 A.3d at 1142).

Roadepot maintains that § 5.1(a) of the lease is ambiguous. Section 5.1(a) assigns to the tenant responsibility for paying "Real Estate Taxes," which, as defined in the lease, includes

"assessments for betterments and improvements that are levied or assessed by any lawful authority on the [p]remises." Roadepot argues that the "sewer assessments levied by [Coventry] are intended to raise funds to pay for sewer infrastructure" and, so, one might reasonably interpret § 5.1(a) of the lease to make the tenant responsible for payments of the Fast Track Assessment.

Roadepot asserts that § 5.1(b)(v) of the lease is susceptible to more than one reasonable interpretation and is thus ambiguous. Section 5.1(b)(v) states, "[t]axes shall not include the following: * * * (v) any fees * * * in consideration [for] * * * utility service, specifically, excluding, impact, loophole and proffer fees." Roadepot argues that there are two interpretations to this language; either the language creates an exception to the exception, which makes the tenant responsible for payment of impact, loophole, and proffer fees, or the words "specifically, excluding" could be interpreted as meaning "for example," in which case the landlord would be responsible for impact, loophole, and proffer fees.

At trial, the following dialogue occurred between the trial justice and counsel for Roadepot:

> "THE COURT: Any other impact fees would be the responsibility of the landlord; correct?
>
> "[Counsel]: I don't think I agree with that, because if you look at the language in 5.1(b), there's a carve-out to the carve-out there. The paragraph begins by saying that the tenant is responsible for all real estate taxes. That's a defined term that includes assessments. Then there are exceptions to that general obligation on the part of the tenant. All right?
>
> "And then if you look at subsection (v) within 5.1(b), it's talking about specifically excluding impact, loophole, and proffer fees. So there's an exclusion to the exclusion there, which I say puts back the impact fee obligation upon Home Depot, the tenant.
>
> "THE COURT: I don't read it that way.

- 9 -

"I think that was just - I mean, if you look at the, you know, the whole picture, I think the language was a little poor, but I think when they said that in that section, any fees 'relating to the initial development or subsequent redevelopment' or any fees paid to 'a governmental authority in consideration of obtaining any of the approvals or utility service, specifically, excluding * * *,' I think they meant to say, more specifically, not that it wasn't an exclusion. I think it was to detail. It was, for example. That's basically what they were saying. That's the way I read it.

"So I think they were saying that any impact, loophole, or proffer fees, even though that terminology is not utilized in Rhode Island, I think they were saying that those fees, that type of fee, would be the responsibility of the landlord. I think they start with the proposition that if it's not specifically provided for in the lease for payment by the tenant, that it would be the landlord's responsibility."

Although the trial justice determined that the lease was unambiguous, this Court does not defer to the trial justice's interpretation of the language of the lease but rather makes an independent, de novo review of the issue. See 5750 Post Road Medical Offices, LLC, 138 A.3d at 166-67. Thus, this Court must determine whether there is more than one reasonable interpretation of the lease. See Botelho, 130 A.3d at 176-77.

Based upon our careful review of the contractual language, we are in agreement with the trial justice and conclude that, under the unambiguous terms of the lease, the landlord is solely responsible for payment of the Fast Track Assessment. Section 5.1(a) of the lease requires Home Depot, as the tenant, to pay all real estate taxes on the premises. Section 5.1(b)(v), however, excludes from the ambit of real estate taxes "any fees or other sums paid to a governmental authority in consideration of obtaining any of the [a]pprovals or utility service[s] * * *." It is significant to our analysis that the Fast Track Assessment is a one-time assessment, payable over twenty years, to defray the cost of constructing a new sewer line and connecting it to the West Warwick sewer treatment facility.

Here, the landowner at the time of the assessment, Commerce Park, elected to pay the obligation in twenty annual installments. We conclude therefore that the Fast Track Assessment constitutes a fee paid to a governmental authority in consideration of obtaining utility service, which under the lease is the responsibility of the landlord. We also agree with the trial justice that the language "specifically, excluding, impact, loophole and proffer fees[,]" to the extent such terms are relevant, connotes that such fees specifically are excluded from the definition of real estate taxes. Accordingly, we affirm the Superior Court's grant of summary judgment in favor of Home Depot insofar as it establishes Roadepot's liability for the payment of the Fast Track Assessment.

**B**

**Exclusion of Extrinsic Evidence**

Roadepot also argues that, even if the lease is not ambiguous, the Superior Court erred by excluding Roadepot's extrinsic evidence because it is relevant to prove the meaning of the lease. The extrinsic evidence Roadepot sought to present included: Cambio's testimony that "his understanding and intent" was that the tenant was responsible for paying the assessment; the parties' course of dealing in that Home Depot had paid the assessment from 2005 through 2009 without objection; and the parties' course of dealing with respect to Home Depot's payment of all sewer service charges.

Having determined that the lease is unambiguous, a determination with which we agree, the trial justice did not err by excluding evidence of the subjective intent of the persons who negotiated the lease or of the parties' course of conduct. It is virtually an immutable principle of law that "[t]he language employed by the parties to a contract is the best expression of their contractual intent * * *." Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 746 (R.I. 2009).

- 11 -

This Court has repeatedly held that the parties' subjective intent is irrelevant to contract interpretation and courts should only consider the intent that is clearly expressed in the language of the contract itself. Botelho, 130 A.3d at 176-77. Therefore, as the contract was unambiguous, the Superior Court properly excluded extrinsic evidence concerning the parties' subjective intent and course of conduct.

## C

### Unjust Enrichment

After establishing Roadepot's liability for payment of the Fast Track Assessment under the provisions of the lease, the Superior Court held a bench trial on Home Depot's counterclaim for breach of contract seeking damages to compensate it for all payments it had made between 2005 and 2014. The parties stipulated that Home Depot had made payments of $388,657.21 concerning the Fast Track Assessment and $16,847.27 in late fees.

The trial justice considered Home Depot's claim for reimbursement in two discrete time periods—2005 to September 17, 2009, the date on which Home Depot notified Roadepot that payment of the Fast Track Assessment bill was Roadepot's responsibility, and post-September 17, 2009. With respect to payments made by Home Depot from 2005 to September 17, 2009, the trial justice first considered the voluntary payment doctrine, one of the defenses raised by Roadepot, which "bars recovery of payments voluntarily made with full knowledge of the facts." Cappalli v. BJ's Wholesale Club, Inc., 904 F.Supp.2d 184, 194 (D. R.I. 2012) (quoting Solomon v. Bell Atlantic Corp., 777 N.Y.S.2d 50, 55 (N.Y. App. Div. 2004)). Stating, however, that "the doctrine has been increasingly analyzed in tandem with the doctrine of unjust enrichment[,]" the trial justice held that Home Depot was entitled to reimbursement for Fast Track Assessment

payments it made from 2005 to September 17, 2009, under equitable principles of unjust enrichment pursuant to Restatement (Third) Restitution and Unjust Enrichment § 7 (2011).

With respect to payments made by Home Depot after September 17, 2009, the trial justice also ruled that Home Depot was entitled to reimbursement. In rejecting the application of the voluntary payment doctrine, he found that it was reasonable for Home Depot to have paid the Fast Track Assessment to avoid the imposition of a lien and possible eviction by its landlord or foreclosure by the town at a tax sale. At a subsequent hearing on May 26, 2015, the trial justice explained that, although "the manner in which [he] approached the bulk of [Home Depot's] claim * * * was an equitable approach basically[,]" after mid-September of 2009, "the claim became a contractual dispute, more legal in nature[.]"

On appeal, Roadepot argues that the trial justice erred in sua sponte reframing Home Depot's counterclaim as an equitable claim for unjust enrichment without providing the parties notice and an opportunity to present evidence and argument. See Bruce Brayman Builders, Inc. v. Lamphere, 109 A.3d 395, 398 (R.I. 2015) ("[W]hen a trial justice considers and rules on an issue sua sponte, the parties must be afforded notice of the issue and allowed an opportunity to present evidence and argue against it.") (quoting Catucci v. Pacheco, 866 A.2d 509, 515 (R.I. 2005)). Roadepot contends that Home Depot's counterclaim alleged exclusively breach of contract and should have been resolved purely on contract principles. Quoting Mehan v. Gershkoff, 102 R.I. 404, 409, 230 A.2d 867, 870 (1967), Roadepot further posits that "where there is an express contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject matter."

Home Depot counters by pointing out that Roadepot raised eight affirmative defenses, all of which were equitable theories, albeit not specifically unjust enrichment. Home Depot

- 13 -

further asserts that the fact that Roadepot raised equitable issues "resulted in the Superior Court using an equitable analysis" and that the "issues were fully presented by the parties."

In his decision, the trial justice concluded:

> "In light of the clear contractual language 'defin[ing] the rights of the parties,' Home Depot has available to it a claim in restitution for the benefit it mistakenly conferred to [Roadepot]. * * * To find otherwise would allow Roadepot to be unjustly enriched as a result of Home Depot's 'error and inadvertence,' which is precisely what the doctrine of restitution seeks to avoid. * * * Consequently, Home Depot is entitled to reimbursement with respect to Fast Track Assessment payments from 2005 to September 17, 2009."

The Superior Court resolved Home Depot's counterclaim by applying equitable principles.[5] Home Depot's counterclaim, however, did not assert any claims for equitable relief, nor did Home Depot seek to amend its complaint to add a claim under equity. "Under the general principles of the adversary system, a party should not be granted relief that it did not request." Providence Journal Co. v. Convention Center Authority, 824 A.2d 1246, 1248 (R.I. 2003). Further, although Roadepot defended on some equitable grounds, it did not defend on restitution or unjust-enrichment grounds. "Our caselaw consistently has mandated that when a trial justice considers and rules on an issue sua sponte, the parties must be afforded notice of the issue and allowed an opportunity to present evidence and argue against it." Catucci, 866 A.2d at 515.

---

[5] We recognize that, "as a technical and historical matter, some strands of restitution are 'legal' while others are 'equitable[,]'" Colleen P. Murphy, Recognizing Restitutionary Causes of Action and Remedies Under Rhode Island Law, 20 Roger Williams U.L.Rev. 429, 436 (2015), and that "[t]he chameleon-like qualities of the term 'restitution' permit its invocation in a variety of circumstances where the legal or equitable nature of a given remedy may not be apparent." Restatement (Third) Restitution and Unjust Enrichment, § 4 cmt. a. at 28 (2011). In light of the trial justice's explanation that he utilized an "equitable approach" to part of the claim and a legal approach to the rest, we need not precisely demarcate the Maginot Line between law and equity in the context of this case.

We are of the opinion that the trial justice erred in applying equitable principles of restitution and unjust enrichment to Home Depot's counterclaim for breach of contract without affording the parties an opportunity to address the issues. Accordingly, we vacate the judgment to the extent that the Superior Court ordered Roadepot to reimburse Home Depot for Fast Track Assessment payments made before September 17, 2009.

**D**

**Voluntary Payment Doctrine**

We now turn to Roadepot's contention that the trial justice erred by failing to apply the voluntary payment doctrine correctly. Roadepot acknowledges that the trial justice correctly stated that the doctrine "bars recovery of [those] payments [which] are made with full knowledge of the facts." Cappalli, 904 F.Supp.2d at 194-95. As the trial justice noted, "the purpose of the voluntary payment doctrine is to promote stability in transactions and to 'allow[] entities that receive payment * * * to rely upon these funds and to use them unfettered in future activities' without fear of a claim for reimbursement by the payor." (Quoting Putnam v. Time Warner Cable of Southwestern Wisconsin, Limited Partnership, 649 N.W.2d 626, 633 (Wis. 2002).)

The trial justice concluded, however, that the voluntary payment doctrine was not applicable to the case at bar. Preliminarily, he noted that application of the doctrine in this case would not further its primary objectives, stating:

> "importantly, Home Depot does not seek reimbursement from the [t]own, but from Roadepot. To allow Home Depot to recover the amount of the Fast Track Assessment payments from Roadepot would not upset the transactions made with the [t]own, and as such, would not undermine the voluntary payment doctrine's policy of promoting stability and reliability in transactions."

Moreover, with respect to the payments made from 2005 to September 17, 2009, he found that Home Depot made them "under the mistaken belief that it was responsible for the payments

under the lease agreement." As for the payments made after September 17, 2009, the trial justice credited the testimony of Tascione and held that "it was reasonable for Home Depot to pay the Fast Track Assessment, specifically to avoid the imposition of a lien and dispossession by Roadepot, and later to pursue a restitution claim."

Because the voluntary payment doctrine is an affirmative defense, Roadepot bore the burden of proving its applicability. "[T]he general rule is that a voluntary payment made under a mistake or in ignorance of the law, but with full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back." Nelson v. Swenson, 46 R.I. 26, 28, 124 A. 468, 468-69 (1924) (quoting 30 William Mack Cyclopedia of Law and Procedure, 1313 (1908)).

Here, the trial justice specifically found that "Home Depot paid the Fast Track Assessment, without protest, under the mistaken belief that it was responsible for the payments under the lease agreement." This finding is supported by Tascione's testimony that, at some point after 2005, the assessment payments were made by a vendor and that there was confusion as to whether the bills were for sewer usage as opposed to infrastructure. Thus, the payments made before September 17, 2009, were not made by Home Depot with full knowledge of all of the facts. Clearly, after September 17, 2009, however, Home Depot was no longer operating under any misconception about the purpose of the Fast Track Assessment. Nevertheless, the trial justice declined to apply the voluntary payment doctrine because he determined that Home Depot paid the assessment in order to avoid the adverse consequences of nonpayment, thereby protecting its leasehold interest. "It is well settled that one is not a volunteer or stranger when he pays to save his interest in his property." Cobb v. Osman, 433 P.2d 259, 263 (Nev. 1967) (applying Nevada law). It is our opinion that the trial justice appropriately considered the fact

that Home Depot made the payments to avoid the imposition of a lien in declining to apply the voluntary payment doctrine.

Finally, we recognize, as did the trial justice, the distinction between a claim against the recipient of a voluntary payment and a claim for reimbursement against a third party allegedly responsible for the payment. In the circumstances of this case, as the trial justice articulated, Home Depot is seeking reimbursement from Roadepot, and not from the town to which the payments were made. To allow Home Depot to recover the amount of the Fast Track Assessment that it has paid, therefore, would not undermine the policy considerations underlying the voluntary payment doctrine—namely, promoting the stability of transactions. Accordingly, we are satisfied that the trial justice did not err in his application of the voluntary payment doctrine. We affirm the judgment, therefore, with respect to the reimbursement of all payments made by Home Depot after September 17, 2009.

**E**

**Late Fees and Penalties**

Home Depot argues that the Superior Court erred in denying it an award of $16,847.27 in late fees because Home Depot's late payments were primarily the result of Roadepot's failure to pay for the Fast Track Assessment in the first place, as required by the lease.

We have often stated, however, that "a party claiming injury that is due to breach of contract or tort has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998). Here, it is evident that Home Depot's failure to make timely payments of the Fast Track Assessment was due to its own lack of reasonable diligence rather than to any confusion as to the party responsible for making the payments. As Tascione candidly testified, Roadepot had

- 17 -

nothing to do with the imposition of the late penalties. Although the trial justice applied equitable principles to deny Home Depot's claim for reimbursement of late fees, we are satisfied that Home Depot is not entitled to recover the penalties it incurred for its failure to make timely payments.

## F

### Award of Prejudgment Interest

Lastly, Home Depot argues that the Superior Court should not have limited its award of prejudgment interest to monies paid by Home Depot after September 2009. Conversely, Roadepot argues that the Superior Court erred in awarding any prejudgment interest.

General Laws 1956 § 9-21-10(a)(2)[6] makes clear that prejudgment interest must be applied when pecuniary damages are awarded. It applies to breach-of-contract actions. Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 755 (R.I. 1995). The addition of prejudgment interest "is a ministerial act which does not allow for any discretion by the judge * * *." King v. Huntress, Inc., 94 A.3d 467, 499-500 (R.I. 2014). Here, the Superior Court applied prejudgment interest only to the payments made after September 2009 because, as the trial justice explained, after that date, the parties' dispute "became a contractual dispute, more legal in nature." In light of the fact that we are vacating the trial justice's decision with respect to the payments made from 2005 to September 17, 2009, we decline to address the arguments raised by Home Depot in this regard. We affirm, however, the award of prejudgment interest for all payments made after September 17, 2009.

---

[6] General Laws 1956 § 9-21-10(a) states, in relevant part:
> "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein."

- 18 -

## III

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court to the extent it required Roadepot to pay Home Depot a sum equal to the Fast Track Assessment payments made by Home Depot before September 17, 2009. We affirm the judgment in all other respects. The papers shall be remanded to the Superior Court for further proceedings consistent herewith. The Superior Court shall have discretion to permit the reopening of the pleadings and/or evidence and to conduct such further hearings as it deems fit.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Roadepot, LLC et al. v. Home Depot, U.S.A., Inc. |
| **Case Number** | No. 2015-347-Appeal.<br>No. 2015-348-Appeal.<br>No. 2015-349-Appeal.<br>(KC 10-540) |
| **Date Opinion Filed** | June 23, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mark A. Pogue, Esq.<br><br>For Defendant:<br><br>Jeffrey S. Brenner, Esq. |