June 13, 2023

**Supreme Court**

No. 2022-166-Appeal.
(PC 16-5445)

|  |  |
|---|---|
| Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Certificate Trustee of BOSCO CREDIT II TRUST Series 2010-1 | : |
|  | : |
| v. | : |
|  | : |
| David Cavalloro et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Wilmington Savings Fund Society,  :
 FSB, not in its individual capacity
but solely as Certificate Trustee of
BOSCO CREDIT II TRUST Series
           2010-1

          v.              :

   David Cavalloro et al.      :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendants, David Cavalloro and

Nicole Cavalloro (the Cavalloros), appeal from a Superior Court final judgment in

favor of the plaintiff, Wilmington Savings Fund Society, FSB.[1]  At issue was a

dispute over payments due under a promissory note relating to the Cavalloros'

---

[1]    The full title of the plaintiff entity is "Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Certificate Trustee of BOSCO CREDIT II TRUST Series 2010-1."  For the sake of brevity, however, we shall hereinafter refer to it simply as Wilmington Savings.

We further note that, when referring to the plaintiff throughout this opinion, we are making general reference to the Note Holder.  As noted *infra*, Wilmington Savings was substituted as the plaintiff for Deutsche Bank National Trust Company (Deutsche Bank). *See* Part I.B, *infra*.

mortgage. This appeal came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and after carefully reviewing the record, we are of the opinion that cause has not been shown and that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, the judgment appealed from is vacated and the case is remanded to the Superior Court.

## I

## Facts and Travel

## A

## The Terms and Circumstances of the Cavalloros' Loan Obligation

It is undisputed that (1) on or about October 27, 2005, Accredited Home Lenders, Inc. extended a mortgage loan to the Cavalloros in the principal amount of $75,000, and (2) the loan agreement was memorialized in a Note bearing the same date (the Note).[2] Pursuant to the terms of the Note, the interest rate was 8.5 percent, with the Cavalloros being required to make monthly payments of $576.69 beginning on December 1, 2005 and ending on November 1, 2020. It is undisputed that, for a

---

[2] At some point in time after the Note was executed, it was transferred to Deutsche Bank. The details of that transfer are of no relevance to this case.

substantial period of time, the Cavalloros made the required payments on the Note.[3]

However, it is also undisputed that the Cavalloros failed to make the required

payment which was due on March 1, 2013 and thereafter.

## 1. The Notice and Default Provisions of the Note

Significantly, the Note provides that, if the borrowers fail to "pay the full

amount of each monthly payment on time," the Note Holder "may" send written

notice that failure to pay the overdue amount "by a certain date" will result in default.

The Note also provides (1) that the just-mentioned "certain date" must be at least ten

days after the date on which the notice is mailed to the borrowers; and (2) that default

results if the borrowers fail to pay the overdue amount by the "certain date." The

Note further provides that, when borrowers are in default, the Note Holder "may"

require them to immediately pay the full amount owed on the Note.

The Note (which was signed by each of the borrowers) sets forth the following

procedures relative to the Note Holder giving notice to the borrowers:

> "Any notice that must be given to me under this
> Note will be given by delivering it or by mailing it by
> certified mail addressed to me at the Property Address
> above. A notice will be delivered or mailed to me at a

---

[3]     It is undisputed that, as of March 1, 2013, the amount due pursuant to the Note
was substantially less than the original $75,000.

different address if I give the Note Holder a notice of my different address."[4]

## 2. The Notice Provided to the Cavalloros

On or about July 5, 2016, Franklin Credit Management Corporation (Franklin), the then-servicer of the loan, sent the Cavalloros a letter which read in pertinent part as follows:

> "Please be advised that you are in default under the terms of the Note you entered into with Accredited Home Lenders, Inc., on 10/27/2005, * * * for failure to pay amounts due. * * *
>
> "The loan is due for 04/01/2013 and subsequent payments, plus late charges, fees and costs. As of today, the total amount past due is $24,336.12."

However, that July 5, 2016 letter was addressed as follows:

> "DAVID CAVALLORO & NICOLE CAVALLORO
> c/o Ferdinandi & Mastrati, LLP
> 1441 Park Avenue,
> Cranston, RI 02920"[5]

---

[4] The term "Property Address" in the above-quoted provision in the Note concerning the giving of notice refers to the address of the Cavalloros' property that is subject to the mortgage—namely:
> 98 Church Hill Drive,
> Cranston, RI 02920.

[5] It is not clear from the record why notice was sent to the Ferdinandi & Mastrati law firm or what relationship (if any) may exist or may have existed between that law firm and the Cavalloros. In any event, the Cavalloros stated in their responses to plaintiff's requests for admission that they had no recollection of ever seeing the July 5, 2016 notice letter.

- 4 -

It is clear that the July 5, 2016 letter was not sent to the Cavalloros' "Property Address" which is specifically referred to in the Note; and there is no contention that the Cavalloros ever gave the "Note Holder" a "notice of * * * different address."

On September 12, 2016, a debt collector sent a second notice letter on behalf of Franklin addressed to the Cavalloros, but once again the letter was addressed to the Ferdinandi & Mastrati law firm. That letter read in pertinent part as follows:

> "You failed to make the payment due under the note on March 1, 2013 nor have subsequent payments been made under the note. You were notified of the overdue payment on August 12, 2016. You did not cure the non-payments under the note. The note is being accelerated based on the default and the principal sum owed is $68,055.48, plus interest of $19,938.79 (as calculated up to August 12, 2016) and fees of $1,326.18, for a total amount owed of $89,320.45."

## B

## The Superior Court Proceedings

On November 22, 2016, Deutsche Bank National Trust Company (Deutsche Bank), which was then serving as the trustee for BOSCO CREDIT II TRUST Series 2010-1, filed a complaint in Providence County Superior Court against the Cavalloros in effect alleging breach of contract. The complaint alleged that the Cavalloros had "defaulted under the terms of the note * * *."

On December 18, 2018, plaintiff moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure; and on March 20, 2019, the

Cavalloros filed their objection thereto. The parties disputed whether the Cavalloros had received sufficient notice of default pursuant to the terms of the Note and whether such a failure was a material breach of contract by plaintiff that should have resulted in a substantial reduction in the amount due to plaintiff. In their memorandum in support of their objection, the Cavalloros stated:

> "Had Defendants[] received this correspondence, they would have been given the opportunity to bring the Note current when it was a manageable amount. But they never got the chance because the notice was **not** mailed to Defendants' address as required by the terms of the Note * * * but rather it was sent to Defendants c/o Ferdinandi & Mastrati, LLP, 1441 Park Avenue, Cranston, RI 02920. The Defendants first learned of the default when suit was filed and the amount demanded was over $68,000.00. In short, Defendants were not given notice of a default pursuant to the note, were not given an opportunity to cure their default prior to being sued and as a result are now prejudiced and facing hardship because of Plaintiff's failure to follow the notice provision of the Note. Whether the Plaintiff followed the terms of the Note and its notice provisions is a question of material fact[] such that the granting of summary [j]udgment is not appropriate." (Footnote omitted.)

On March 29, 2019, plaintiff filed a reply to the Cavalloros' objection.

On April 10, 2019, a hearing was held on plaintiff's motion for summary judgment. The Cavalloros argued in pertinent part as follows:

> "Whether the plaintiff's breach of the contract and the note because they did not send them the notice, they sent it to a third party, I think it's an issue that's in dispute.

It's a material issue of fact. I think it might go to damages * * *."[6]

Specifically, it was the Cavalloros' contention that plaintiff's failure to send notice of default to the Property Address as set forth in the Note prejudiced them in that, due to the fact that they never received the notice, they never had the opportunity, as required by the terms of the Note, to cure the default by the "certain date." The hearing justice disagreed, and she summarized her reasoning about the Cavalloros' argument as follows:

> "I do not really find [that argument] persuasive, in light of the fact that they clearly admit to having signed the note, * * * admit to being in default on the note. And whether or not they received notice in July of 2016, official notice * * * pursuant to the terms of the note is, I don't think, material for the reason that they knew, that they had actual knowledge that they had not paid on the note. If anyone was going to know they had not paid, it would be them.

> "Also, my recollection is that the terms of the note are permissive in terms of the lender may send notice and it's not a requirement."

On April 23, 2019, the hearing justice granted plaintiff's motion for summary judgment and awarded plaintiff judgment in the amount of $102,888.87 "in addition

---

[6] The Cavalloros elaborated on the damages issue by contending that, if plaintiff had breached the contract with respect to the notice issue, then "the damages should * * * be significantly less based on [its] breach and not providing notice to the defendants * * *."

to interest, late fees, and costs, including attorneys' fees as permitted * * * to accrue thereafter * * *."

On April 26, 2019, the Cavalloros filed a notice of appeal from the order granting summary judgment to plaintiff. On November 29, 2019, this Court remanded the case to the Superior Court in view of the absence of a final judgment and the interlocutory nature of the order appealed from.

On December 12, 2019, the case was returned to the Superior Court. On September 24, 2020, the Superior Court granted Deutsche Bank's motion to substitute Wilmington Savings for itself as plaintiff. On July 8, 2021, final judgment was entered in favor of plaintiff in the total amount of $112,583.87 (which included attorneys' fees in the amount of $9,695). On July 9, 2021, the Cavalloros filed a notice of appeal from that judgment.

## II

## Issue on Appeal

The Cavalloros contend that whether plaintiff complied with the Note's "notice provisions is a question of material fact" that should have precluded the grant of summary judgment. The plaintiff argues that the hearing justice applied the standard correctly because it was not required to give notice, therefore rendering the manner in which the notice was sent immaterial. Accordingly, it is the task of this Court to determine which reading of the Note is correct.

### III

### Standard of Review

It is well established that "[t]his Court reviews the grant of a motion for summary judgment in a *de novo* manner." *Suncar v. Jordan Realty*, 276 A.3d 1274, 1277 (R.I. 2022). Under this standard, we "apply the same standards used by the hearing justice." *Id.* (brackets omitted) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 129 (R.I. 2013)). This Court "will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013) (internal quotation marks omitted). In addition, we have repeatedly emphasized that "[s]ummary judgment is a drastic remedy" which "should be dealt with cautiously." *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 390 (R.I. 2008) (internal quotation marks omitted).

### IV

### Analysis

We must first determine whether the contract at issue (*viz.*, the Note) is ambiguous or unambiguous; that is an issue of law. *Gorman v. Gorman*, 883 A.2d 732, 738 n.8 (R.I. 2005) ("It is a fundamental principle of contract law that the existence of ambiguity *vel non* in a contract is an issue of law to be determined by

the court."); *see also Irene Realty Corp. v. Travelers Property Casualty Company of America*, 973 A.2d 1118, 1122 (R.I. 2009).

In making that determination, it is incumbent upon us to read the contract *in its entirety*. *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I. 2004) ("We * * * adhere to the rule of interpretation that when considering whether a contract is clear and unambiguous, the document must be viewed *in its entirety* and its language be given its plain, ordinary and usual meaning.") (emphasis added) (internal quotation marks omitted); *see Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62-63 (R.I. 2005) ("When determining whether a contract is ambiguous, the agreement is viewed *in its entirety* and the words used in the contract are given their ordinary meaning.") (emphasis added); *see also Morgan v. Bicknell*, 268 A.3d 1180, 1184 (R.I. 2022); *Roadepot, LLC v. Home Depot, U.S.A., Inc.*, 163 A.3d 513, 519 (R.I. 2017); *JPL Livery Services, Inc. v. Rhode Island Department of Administration*, 88 A.3d 1134, 1142 (R.I. 2014); *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004); *see generally Smith v. United States*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context.  The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").

- 10 -

Reading the language of the relevant portions[7] of the Note in its entirety, it is clear to us that, while we are not dealing with a model of good draftsmanship, the Note is not ambiguous with respect to the manner in which the Note Holder is required to give notice if it chooses to give notice in any particular case. It is our definite view that the import of that language is that (1) the Note Holder was not obliged to provide the borrowers with notice;[8] *but* (2) if the Note Holder should choose to give notice, such notice should be provided in one of the two modalities described in plain English in the Note.[9] It is our view that the permissive aspect of the Note (*viz.*, that the Note Holder "may" send written notice) should not be viewed in isolation without attention being paid to the larger context. *See Hill v. M.S. Alper & Son, Inc.*, 106 R.I. 38, 47, 256 A.2d 10, 15 (1969) ("In ascertaining what the intent is we must look at the instrument as a whole and not at some detached portion

---

[7] The pertinent language of the Note is quoted in Part I.A.1, *supra*.

[8] Since the issue is not before us on appeal, we make no explicit ruling as to the propriety *vel non* of a mortgage-related promissory note which makes providing notice to the borrower optional. *But cf. Woel v. Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust Series 2017-17*, 228 A.3d 339 (R.I. 2020).

[9] According to the explicit terms of the Note, notice "will be given by delivering it or by mailing it by certified mail * * * at the Property Address above."

thereof."). It is our view that, once the Note Holder chooses to give notice, it must do so in accordance with the procedures that are so clearly stated in the Note.[10]

In reading the inartfully phrased language of the Note in this manner, we are acutely conscious of the venerable principle that contractual language should be read in a common sense manner. *See, e.g.*, *Sturbridge Home Builders, Inc.*, 890 A.2d at 63 ("[T]he question is * * * whether the language has only one reasonable meaning when construed * * * *in an ordinary common sense manner*.") (quoting *Textron, Inc. v. Aetna Casualty and Surety Company*, 638 A.2d 537, 541 (R.I. 1994));[11] *City of*

---

[10]     We are aware that the one sentence in the text of the Note links the requirement for the giving of notice to "[a]ny notice that must be given to me * * *." However, the very next sentence in the Note refers simply to "[a] notice * * *." It is our view, once again reading the document in its entirety, that the procedures relative to giving notice are mandatory whenever the Note Holder chooses to give notice to the borrowers.

[11]     In its important and frequently cited opinion in *Textron, Inc. v. Aetna Casualty and Surety Company*, 638 A.2d 537 (R.I. 1994), this Court quoted with approval the following insightful and memorable sentence from the Third Circuit's opinion in *New Castle County v. Hartford Accident and Indemnity Company*, 970 F.2d 1267 (3rd Cir. 1992):

> "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate, absent a showing that the term has acquired a special meaning the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *New Castle County*, 970 F.2d at 1270; *see Textron, Inc.*, 638 A.2d at 541.

- 12 -

*East Providence v. United Steelworkers of America, Local 15509*, 925 A.2d 246, 252-53 (R.I. 2007) ("It is well settled that this Court will eschew a hypertechnical interpretation of a contract term in favor of a more commonplace construction."). It is our view that our interpretation of the sometimes meandering terms of the Note at issue constitutes an entirely reasonable reading of the language of the Note. *See Roadepot, LLC*, 163 A.3d at 519 ("When there is only one reasonable interpretation of a contract, the contract is deemed unambiguous."). Accordingly, it is our opinion that the plaintiff's failure to send the notice of default to the Property Address referred to in the Note was not in accordance with the terms of the Note, and summary judgment was therefore improperly granted.

## V

## Conclusion

For the reasons set forth in this opinion, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Certificate Trustee of BOSCO CREDIT II TRUST Series 2010-1 v. David Cavalloro et al. |
| **Case Number** | No. 2022-166-Appeal. (PC 16-5445) |
| **Date Opinion Filed** | June 13, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa Darigan |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Christine A. Murphy, Esq. |
| | For Defendants:<br><br>John Manni, Esq. |